James A. Mills, Jr., Phil Burleson (Court-appointed), Robt. T. Baskett, Dallas, Tex., for petitioner-appellant.

Harold Lloyd FINKLEA, Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.

No. 73–3598.

United States Court of Appeals, Fifth Circuit.

Jan. 13, 1975.

John L. Hill, Atty. Gen., Larry F. York, First Asst. Atty. Gen., Joe B. Dibrell, Chief, Enforcement Div., Thomas M. Pollan, Gilbert T. Pena, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

This is an appeal from a denial without hearing of a petition for habeas corpus. We reverse and remand for an evidentiary hearing.

On March 11, 1970, a Dallas County jury convicted petitioner Harold Lloyd Finklea of the possession of eight penny matchboxes filled with marijuana and sentenced him to life imprisonment in the Texas Department of Corrections.[1]

1. One of petitioner's arguments on direct appeal and throughout his ensuing habeas endeavors has been that the life sentence he received for the possession of a relatively small amount of marijuana constituted cruel and unusual punishment in violation of the Eighth Amendment. Accordingly, petitioner's brief urges us to reconsider our decision in Rener v. Beto, 447 F.2d 20 (5th Cir. 1971), continuing the principle that a sentence with-

More than two years later, on May 31, 1972, the Texas Court of Criminal Appeals approved a Commissioner's opinion affirming Finklea's judgment and sentence.[2] Finklea's subsequent state application for a Writ of Habeas Corpus was denied without hearing by the trial court and affirmed without opinion by the Court of Criminal Appeals.

Having thus exhausted his state remedies, Finklea, on January 8, 1973, petitioned for federal habeas relief in the District Court. On October 9, 1973, his petition was denied without a hearing.

Finklea's federal petition, like his state application, alleged two main grounds for relief: (1) that the prosecution suppressed evidence favorable to him (a "prosecution report" and search warrant affidavit discussed below) and failed to correct false and perjured testimony of arresting officer Hopgood, the *sine qua non* prosecution witness; and (2) that he was denied effective assistance of counsel in that his appointed counsel[3] failed, *inter alia*, to consult with him prior to trial, to interview any witnesses prior to trial, to call any witnesses for the defense, and particularly failed to request or obtain production of the report and affidavit.[4]

As documentary support for his petition, Finklea presented a partial transcript of the trial testimony of Officer Hopgood, a "prosecution report" describing Hopgood's arrest of Finklea, on a charge of receiving and concealing stolen property, and a search warrant affidavit sworn by Lt. Charles Hilliard which recited that the facts therein relating to Finklea's arrest were told to affiant by Officer Hopgood. Hopgood testified at trial that he observed the car in which Finklea was a passenger turn without giving a signal. He stopped the offending vehicle approximately three blocks from 1211 South Main Street in order to issue a traffic citation, and saw the passenger (later discovered to be Finklea) throw an object (which he later found to be a Tastee Bread wrapper containing the marijuana matchboxes and assorted pills) out the window just after the car stopped. After the driver came back to the police car to show his license and inquire as to why he was stopped, Officer Hopgood testified that he walked up to the driver's window, noticed petitioner trying to hide a box under the front seat, and observed purple narcotics seals on containers in cardboard boxes on the front seat and floor. He then arrested the two occupants, radioed for help, and three other officers, including the Chief of Police and a Police Lieutenant, arrived within two minutes. On cross examination, Hopgood denied knowing or recognizing either Finklea or the driver before the arrest, denied knowing the driver's residence, denied knowing where the car had started this trip, and denied that he was "staking out" 1211 South Main.[5]

in the limits set by a legislature is not cruel and unusual. We do not reach this question, however, since the court was informed at oral argument that petitioner's sentence had been reduced to ten years.

2. Finklea v. State, 481 S.W.2d 889 (Tex.Cr. App.1972). *See* Vernon's Tex.Rev.Civ.Stat. Ann., Article 1811e, Sec. 1(a), (c) (Supp.1974–1975).

3. The trial record indicates that Finklea had retained counsel prior to the time when his bond was forfeited and he was rearrested. It further indicates that while he was in jail after rearrest the retained counsel withdrew from the case without his knowledge. At that time the judge declared him indigent and appointed another attorney. Petitioner also alleges that he knew nothing of this withdrawal and counsel appointment until just before trial, when the appointed counsel requested an open court hearing to determine whether Finklea would "accept me as his court appointed attorney for purposes of trial."

4. As stated, Finklea also raised a claim of cruel and unusual punishment which we pretermitted. *See* Note 1, *supra.*

5. This address was the residence of one Dale Moore, a suspect in a very recent narcotics burglary of a doctor's office located in the 1200 block of South Main.

Another prosecution report covering Finklea's charge for possession of marijuana was attached to respondent's answer and it appears consistent with Hopgood's trial testimony. On the other hand, Lt. Hilliard's search warrant affidavit and the first described prosecution report[6] provide some indication that Hopgood *was* engaged in staking out the 1211 South Main Street residence of Dale Moore, that he saw the car in which Finklea was a passenger come out of the driveway of the Moore residence, that he recognized the driver and Finklea as known narcotics offenders, that they, along with Dale Moore and two others known to be present at his residence on the night of the burglary, were suspects in the narcotics burglary, and that the officer, in effect, made a pretextual traffic stop so that he could search the car. The stolen property prosecution report does not state that petitioner threw any object out of the car. The affidavit does mention that a Tastee Bread wrapper was thrown from the stopped car but asserts it contained "drug administration equipment (needles, syringes, etc)." The affidavit was to obtain a warrant for searching the driver's alleged residence: 1211 South Main.

Petitioner alleges that an attorney representing him in another matter, discovered the prosecution report and the search warrant affidavit in the District Attorney's files (after the record had gone up on direct appeal) and copied them. He argues that this evidence should have been made available to his attorney at trial. *See* Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He urges that, at the very least, this "new" evidence presents a factual dispute as to whether it came within the ambit of that case and was the type of dispute which could only have been resolved after an evidentiary hearing pursuant to Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); 28 U.S.C.

§ 2254(d)(6). We agree. The district court did not reach this potential conflict because it considered that the officer's testimony at trial disclosed that the evidence came from a parcel which had been abandoned rather than being the fruit of a legally questionable search. This view cuts across the appellant's contention that the prosecution withheld materials which could impeach Hopgood's credibility. We also hold that petitioner's claims that his counsel was ineffective presented questions of fact which could not be resolved on the basis of the trial record alone. The standard for judging counsel's effectiveness is, of course, that set out in Herring v. Estelle, 491 F.2d 125, 127–128 (5th Cir. 1974).

Our recitation of facts is intended solely to explicate our reasoning for requiring an evidentiary hearing and intimates no view on the merits that such a hearing will disclose.

Reversed and remanded.

---

6. The arrest number and date on both prosecution reports is the same. They appear to be two different reports for two different offenses arising from the same arrest. Petition-

er's response to respondent's answer below offers to prove that it was the practice for such reports to be referred to a single attorney in the District Attorney's office.