## KEENEY, SUPERINTENDENT, OREGON STATE PENITENTIARY *v.* TAMAYO-REYES

No. 90–1859.   Argued January 15, 1992—Decided May 4, 1992

WHITE, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and SCALIA, SOUTER, and THOMAS, JJ., joined. O'CONNOR, J., filed a dissenting opinion, in which BLACKMUN, STEVENS, and KENNEDY, JJ., joined, *post*, p. 12. KENNEDY, J., filed a dissenting opinion, *post*, p. 24.

*Jack L. Landau,* Deputy Attorney General of Oregon, argued the cause for petitioner. With him on the briefs were *Charles S. Crookham,* Attorney General, *Dave Frohnmayer,* Former Attorney General, *Virginia L. Linder,* Solicitor General, and *Brenda J. Peterson* and *Rives Kistler,* Assistant Attorneys General.

*Steven T. Wax* argued the cause and filed a brief for respondent.*

---

*Briefs of *amici curiae* urging reversal were filed for the State of California et al. by *Daniel E. Lungren,* Attorney General of California, *George Williamson,* Chief Assistant Attorney General, *John H. Sugiyama,* Senior Assistant Attorney General, and *Dane R. Gillette* and *Joan Killeen Haller,* Deputy Attorneys General, and by the Attorneys General for their respective States as follows: *James H. Evans* of Alabama, *Grant Woods* of Arizona, *Larry EchoHawk* of Idaho, *Marc Racicot* of Montana, *Frankie Sue Del Papa* of Nevada, *Robert J. Del Tufo* of New Jersey, *Lacy*

JUSTICE WHITE delivered the opinion of the Court.

Respondent is a Cuban immigrant with little education and almost no knowledge of English. In 1984, he was charged with murder arising from the stabbing death of a man who had allegedly attempted to intervene in a confrontation between respondent and his girlfriend in a bar.

Respondent was provided with a defense attorney and interpreter. The attorney recommended to respondent that he plead *nolo contendere* to first-degree manslaughter. Ore. Rev. Stat. § 163.118(1)(a) (1987). Respondent signed a plea form that explained in English the rights he was waiving by entering the plea. The state court held a plea hearing, at which petitioner was represented by counsel and his interpreter. The judge asked the attorney and interpreter if they had explained to respondent the rights in the plea form and the consequences of his plea; they responded in the affirmative. The judge then explained to respondent, in English, the rights he would waive by his plea, and asked the interpreter to translate. Respondent indicated that he understood his rights and still wished to plead *nolo contendere.* The judge accepted his plea.

Later, respondent brought a collateral attack on the plea in a state-court proceeding. He alleged his plea had not been knowing and intelligent and therefore was invalid because his translator had not translated accurately and completely for him the *mens rea* element of manslaughter. He also contended that he did not understand the purposes of the plea form or the plea hearing. He contended that he did not know he was pleading no contest to manslaughter, but rather that he thought he was agreeing to be tried for manslaughter.

*H. Thornburg* of North Carolina, *Ernest D. Preate, Jr.,* of Pennsylvania, *Charles W. Burson* of Tennessee, and *Kenneth O. Eikenberry* of Washington; and for the Criminal Justice Legal Foundation by *Kent S. Scheidegger.*

After a hearing, the state court dismissed respondent's petition, finding that respondent was properly served by his trial interpreter and that the interpreter correctly, fully, and accurately translated the communications between respondent and his attorney. App. 51. The State Court of Appeals affirmed, and the State Supreme Court denied review.

Respondent then entered Federal District Court seeking a writ of habeas corpus. Respondent contended that the material facts concerning the translation were not adequately developed at the state-court hearing, implicating the fifth circumstance of *Townsend* v. *Sain*, 372 U. S. 293, 313 (1963), and sought a federal evidentiary hearing on whether his *nolo contendere* plea was unconstitutional. The District Court found that the failure to develop the critical facts relevant to his federal claim was attributable to inexcusable neglect and that no evidentiary hearing was required. App. to Pet. for Cert. 37, 38. Respondent appealed.

The Court of Appeals for the Ninth Circuit recognized that the alleged failure to translate the *mens rea* element of first-degree manslaughter, if proved, would be a basis for overturning respondent's plea, 926 F. 2d 1492, 1494 (1991), and determined that material facts had not been adequately developed in the state postconviction court, *id.*, at 1500, apparently due to the negligence of postconviction counsel. The court held that *Townsend* v. *Sain, supra*, at 317, and *Fay* v. *Noia*, 372 U. S. 391, 438 (1963), required an evidentiary hearing in the District Court unless respondent had deliberately bypassed the orderly procedure of the state courts. Because counsel's negligent failure to develop the facts did not constitute a deliberate bypass, the Court of Appeals ruled that respondent was entitled to an evidentiary hearing on the question whether the *mens rea* element of first-degree manslaughter was properly explained to him. 926 F. 2d, at 1502.[1]

---

[1] With respect to respondent's claim that the plea form and plea proceeding were not adequately translated, the Court of Appeals concluded that state postconviction proceedings afforded petitioner ample opportunity to

We granted certiorari to decide whether the deliberate by-pass standard is the correct standard for excusing a habeas petitioner's failure to develop a material fact in state-court proceedings. 502 U. S. 807 (1991). We reverse.

Because the holding of *Townsend* v. *Sain* that *Fay* v. *Noia*'s deliberate bypass standard is applicable in a case like this had not been reversed, it is quite understandable that the Court of Appeals applied that standard in this case. However, in light of more recent decisions of this Court, *Townsend*'s holding in this respect must be overruled.[2] *Fay* v.

---

contest the translations, that the material facts surrounding these issues were adequately developed, and that the state court's findings were adequately supported by the record. The Court of Appeals therefore held that a federal evidentiary hearing on that claim was not required. 926 F. 2d, at 1502.

[2] JUSTICE O'CONNOR asserts that *Townsend* v. *Sain*, 372 U. S. 293 (1963), insofar as relevant to this case, merely reflected existing law. The claim thus seems to be that the general rule stated by the Court in *Townsend* governing when an evidentiary hearing must be granted to a federal habeas corpus petitioner, as well as each of the Court's six criteria particularizing its general pronouncement, reflected what was to be found in prior holdings of the Court. This is a very doubtful claim. Surely the Court at that time did not think this was the case, for it pointedly observed that prior cases had not settled all aspects of the hearing problem in habeas proceedings and that the lower federal courts had reached widely divergent and irreconcilable results in dealing with hearing issues. *Id.*, at 310, and n. 8. Hence it deemed it advisable to give further guidance to the lower courts. It also expressly stated that the rules it was announcing "must be considered to supersede, to the extent of any inconsistencies, the opinions in *Brown* v. *Allen*[, 344 U. S. 443 (1953)]." *Id.*, at 312. This was necessary because *Brown* was inconsistent with the holding of *Townsend* regarding habeas petitioners who failed to adequately develop federal claims in state-court proceedings. See *Brown* v. *Allen*, 344 U. S. 443, 465 (1953) (federal court may deny writ without rehearing of facts "where the legality of [the] detention has been determined, *on the facts presented*," by the state court) (emphasis added); *id.*, at 463 (writ should be refused, without more, if federal court satisfied from the record that "state process has given fair consideration to the issues and the *offered* evidence") (emphasis added). We have unequivocally acknowledged that *Townsend* substantially changed the availability of evidentiary hearings in federal

*Noia* was itself a case where the habeas petitioner had not taken advantage of state remedies by failing to appeal—a procedural default case. Since that time, however, this Court has rejected the deliberate bypass standard in state procedural default cases and has applied instead a standard of cause and prejudice.

In *Francis* v. *Henderson*, 425 U. S. 536 (1976), we acknowledged a federal court's power to entertain an application for habeas even where the claim has been procedurally waived in state proceedings, but nonetheless examined the appropriateness of the exercise of that power and recognized, as we had in *Fay*, that considerations of comity and concerns for the orderly administration of criminal justice may in some circumstances require a federal court to forgo the exercise of its habeas corpus power. 425 U. S., at 538–539. We held that a federal habeas petitioner is required to show cause for his procedural default, as well as actual prejudice. *Id.*, at 542.

In *Wainwright* v. *Sykes*, 433 U. S. 72 (1977), we rejected the application of *Fay*'s standard of "knowing waiver" or "deliberate bypass" to excuse a petitioner's failure to comply with a state contemporaneous-objection rule, stating that the state rule deserved more respect than the *Fay* standard accorded it. 433 U. S., at 88. We observed that procedural rules that contribute to error-free state trial proceedings are thoroughly desirable. We applied a cause-and-prejudice standard to a petitioner's failure to object at trial and limited

---

habeas proceedings. See *Smith* v. *Yeager*, 393 U. S. 122, 125 (1968) *(per curiam)*.

It is not surprising, then, that none of the cases cited by JUSTICE O'CONNOR remotely support *Townsend*'s requirement for a hearing in any case where the "material facts were not adequately developed at the state-court hearing" due to petitioner's own neglect. 372 U. S., at 313. Finally, it is undeniable that *Fay* v. *Noia*'s deliberate bypass standard overruled prior procedural default cases, and it is no less true that *Townsend*'s adoption of that standard as a definition of "inexcusable neglect" made new law.

*Fay* to its facts. 433 U. S., at 87–88, and n. 12. We have consistently reaffirmed that the "cause-and-prejudice" standard embodies the correct accommodation between the competing concerns implicated in a federal court's habeas power. *Reed* v. *Ross*, 468 U. S. 1, 11 (1984); *Engle* v. *Isaac*, 456 U. S. 107, 129 (1982).

In *McCleskey* v. *Zant*, 499 U. S. 467 (1991), we held that the same standard used to excuse state procedural defaults should be applied in habeas corpus cases where abuse of the writ is claimed by the government. *Id.*, at 493. This conclusion rested on the fact that the two doctrines are similar in purpose and design and implicate similar concerns. *Id.*, at 493–494. The writ strikes at finality of a state criminal conviction, a matter of particular importance in a federal system. *Id.*, at 491, citing *Murray* v. *Carrier*, 477 U. S. 478, 487 (1986). Federal habeas litigation also places a heavy burden on scarce judicial resources, may give litigants incentives to withhold claims for manipulative purposes, and may create disincentives to present claims when evidence is fresh. 499 U. S., at 491–492. See also *Reed* v. *Ross, supra*, at 13; *Wainwright, supra*, at 89.

Again addressing the issue of state procedural default in *Coleman* v. *Thompson*, 501 U. S. 722 (1991), we described *Fay* as based on a conception of federal/state relations that undervalued the importance of state procedural rules, 501 U. S., at 750, and went on to hold that the cause-and-prejudice standard applicable to failure to raise a particular claim should apply as well to failure to appeal at all. *Ibid.* "All of the State's interests—in channeling the resolution of claims to the most appropriate forum, in finality, and in having an opportunity to correct its own errors—are implicated whether a prisoner defaults one claim or all of them." *Id.*, at 750. We therefore applied the cause-and-prejudice standard uniformly to state procedural defaults, eliminating the "irrational" distinction between *Fay* and subsequent cases. 501 U. S., at 751. In light of these decisions, it is similarly

irrational to distinguish between failing to properly assert a federal claim in state court and failing in state court to properly develop such a claim, and to apply to the latter a remnant of a decision that is no longer upheld with regard to the former.

The concerns that motivated the rejection of the deliberate bypass standard in *Wainwright, Coleman,* and other cases are equally applicable to this case.[3] As in cases of state procedural default, application of the cause-and-prejudice standard to excuse a state prisoner's failure to develop material facts in state court will appropriately accommodate concerns of finality, comity, judicial economy, and channeling the resolution of claims into the most appropriate forum.

Applying the cause-and-prejudice standard in cases like this will obviously contribute to the finality of convictions, for requiring a federal evidentiary hearing solely on the basis of a habeas petitioner's negligent failure to develop facts in

---

[3] JUSTICE O'CONNOR puts aside our overruling of *Fay* v. *Noia*'s standard in procedural default cases on the ground that in those cases the cause-and-prejudice standard is just an acceptable precondition to reaching the merits of a habeas petitioner's claim, but insists that applying that standard to cases in which the petitioner defaulted on the development of a claim is not subject to the same characterization. For the reasons stated in the text, we disagree. Moreover, JUSTICE O'CONNOR's position is considerably weakened by her concession that the cause-and-prejudice standard is properly applied to a factually undeveloped claim which had been exhausted but which is first asserted federally in a second or later habeas petition.

Contrary to JUSTICE O'CONNOR's view, *post,* at 17, we think it clear that the *Townsend* Court thought that the same standard used to deny a hearing in a procedural default case should be used to deny a hearing in cases described in its fifth circumstance. It is difficult to conceive any other reason for our borrowing the deliberate bypass standard of *Fay* v. *Noia,* particularly if, as the dissent seems to say, *post,* at 17, *Townsend* relied on, but did not repeat, the analysis found in *Fay* v. *Noia.* Yet the dissent insists that the rejection of *Fay* v. *Noia*'s analysis in our later cases should have no impact on a case such as we have before us now.

state-court proceedings dramatically increases the opportunities to relitigate a conviction.

Similarly, encouraging the full factual development in state court of a claim that state courts committed constitutional error advances comity by allowing a coordinate jurisdiction to correct its own errors in the first instance. It reduces the "inevitable friction" that results when a federal habeas court "overturn[s] either the factual or legal conclusions reached by the state-court system." *Sumner* v. *Mata*, 449 U. S. 539, 550 (1981).

Also, by ensuring that full factual development takes place in the earlier, state-court proceedings, the cause-and-prejudice standard plainly serves the interest of judicial economy. It is hardly a good use of scarce judicial resources to duplicate factfinding in federal court merely because a petitioner has negligently failed to take advantage of opportunities in state-court proceedings.

Furthermore, ensuring that full factual development of a claim takes place in state court channels the resolution of the claim to the most appropriate forum. The state court is the appropriate forum for resolution of factual issues in the first instance, and creating incentives for the deferral of factfinding to later federal-court proceedings can only degrade the accuracy and efficiency of judicial proceedings. This is fully consistent with, and gives meaning to, the requirement of exhaustion. The Court has long held that state prisoners must exhaust state remedies before obtaining federal habeas relief. *Ex parte Royall*, 117 U. S. 241 (1886). The requirement that state prisoners exhaust state remedies before a writ of habeas corpus is granted by a federal court is now incorporated in the federal habeas statute.[4] 28 U. S. C.

---

[4] "An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U. S. C. § 2254(b).

§ 2254. Exhaustion means more than notice. In requiring exhaustion of a federal claim in state court, Congress surely meant that exhaustion be serious and meaningful.

The purpose of exhaustion is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court. Comity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claim on the merits. Cf. *Picard* v. *Connor,* 404 U. S. 270, 275 (1971).

Finally, it is worth noting that applying the cause-and-prejudice standard in this case also advances uniformity in the law of habeas corpus. There is no good reason to maintain in one area of habeas law a standard that has been rejected in the area in which it was principally enunciated. And little can be said for holding a habeas petitioner to one standard for failing to bring a claim in state court and excusing the petitioner under another, lower standard for failing to develop the factual basis of that claim in the same forum. A different rule could mean that a habeas petitioner would not be excused for negligent failure to object to the introduction of the prosecution's evidence, but nonetheless would be excused for negligent failure to introduce any evidence of his own to support a constitutional claim.[5]

---

[5] It is asserted by JUSTICE O'CONNOR that in adopting 28 U. S. C. § 2254(d) Congress assumed the continuing validity of all aspects of *Townsend,* including the requirement of a hearing in all fifth circumstance cases absent a deliberate bypass. For several reasons, we disagree. First, it is evident that § 2254(d) does not codify *Townsend*'s specifications of when a hearing is required. *Townsend* described categories of cases in which evidentiary hearings would be required. Section 2254(d), however, does not purport to govern the question of when hearings are required; rather, it lists exceptions to the normal presumption of correctness of state-court

Respondent Tamayo-Reyes is entitled to an evidentiary hearing if he can show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure. We also adopt the narrow exception

findings and deals with the burden of proof where hearings are held. The two issues are distinct, and the statute indicates no assumption that the presence or absence of any of the statutory exceptions will determine whether a hearing is held.

Second, to the extent that it even considered the issue of default, Congress sensibly could have read *Townsend* as holding that the federal habeas corpus standard for cases of default under *Townsend*'s fifth circumstance and cases of procedural default should be the same. Third, § 2254(d) does not mention or recognize any exception for inexcusable neglect, let alone reflect the specific standard of deliberate bypass. In the face of this silence, it should not be assumed that if there is to be a judicially created standard for equitable default, it must be no other than the deliberate bypass standard borrowed by *Townsend* from a decision that has since been repudiated.

We agree with JUSTICE O'CONNOR that under our holding a claim invoking the fifth circumstance of *Townsend* will be unavailing where the cause asserted is attorney error. *Murray* v. *Carrier*, 477 U. S. 478 (1986), and *Coleman* v. *Thompson*, 501 U. S. 722 (1991), dictate as much. Such was the intended effect of those cases, but this does not make that circumstance a dead letter, for cause may be shown for reasons other than attorney error. We noted in *Murray*, a procedural default case, that objective factors external to the defense may impede counsel's efforts to comply and went on to say: "Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, see *Reed* v. *Ross*, 468 U. S., at 16, or that 'some interference by officials,' *Brown* v. *Allen*, 344 U. S. 443, 486 (1953), made compliance impracticable, would constitute cause under this standard." 477 U. S., at 488. Much of the same may be said of cases where the petitioner has defaulted on the development of a claim.

Nor, to the extent it is relevant to our decision in this case, is JUSTICE O'CONNOR's argument that many forms of cause would fall under other *Townsend* circumstances persuasive. For example, the third and sixth circumstances of *Townsend* speak to the denial by a *court* of full and fair hearing; however, a situation where facts were inadequately developed because of interference from officials would fall naturally into the fifth circumstance.

to the cause-and-prejudice requirement: A habeas petitioner's failure to develop a claim in state-court proceedings will be excused and a hearing mandated if he can show that a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing. Cf. *McCleskey* v. *Zant*, 499 U. S., at 494; *Murray* v. *Carrier*, 477 U. S., at 496.

The State concedes that a remand to the District Court is appropriate in order to afford respondent the opportunity to bring forward evidence establishing cause and prejudice, Brief for Petitioner 21, and we agree that respondent should have that opportunity. Accordingly, the decision of the Court of Appeals is reversed, and the cause is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

JUSTICE O'CONNOR, with whom JUSTICE BLACKMUN, JUSTICE STEVENS, and JUSTICE KENNEDY join, dissenting.

Under the guise of overruling "a remnant of a decision," *ante*, at 8, and achieving "uniformity in the law," *ante*, at 10, the Court has changed the law of habeas corpus in a fundamental way by effectively overruling cases decided long before *Townsend* v. *Sain*, 372 U. S. 293 (1963). I do not think this change is supported by the line of our recent procedural default cases upon which the Court relies: In my view, the balance of state and federal interests regarding whether a federal court will *consider* a claim raised on habeas cannot be simply lifted and transposed to the different question whether, once the court will consider the claim, it should hold an evidentiary hearing. Moreover, I do not think the Court's decision can be reconciled with 28 U. S. C. § 2254(d), a statute Congress enacted three years after *Townsend*.

I

Jose Tamayo-Reyes' habeas petition stated that because he does not speak English he pleaded *nolo contendere* to

manslaughter without any understanding of what "manslaughter" means. App. 58. If this assertion is true, his conviction was unconstitutionally obtained, see *Henderson* v. *Morgan*, 426 U. S. 637, 644–647 (1976), and Tamayo-Reyes would be entitled to a writ of habeas corpus. Despite the Court's attempt to characterize his allegation as a technical quibble—"his translator had not translated accurately and completely for him the *mens rea* element of manslaughter," *ante*, at 3—this much is not in dispute. Tamayo-Reyes has alleged a fact that, if true, would entitle him to the relief he seeks.

Tamayo-Reyes initially, and properly, challenged the voluntariness of his plea in a petition for postconviction relief in state court. The court held a hearing, after which it found that "[p]etitioner's plea of guilty was knowingly and voluntarily entered." App. 51. Yet the record of the postconviction hearing hardly inspires confidence in the accuracy of this determination. Tamayo-Reyes was the only witness to testify, but his attorney did not ask him whether his interpreter had translated "manslaughter" for him. Counsel instead introduced the deposition testimony of the interpreter, who admitted that he had translated "manslaughter" only as "less than murder." *Id.*, at 27. No witnesses capable of assessing the interpreter's performance were called; the attorney instead tried to direct the court's attention to various sections of the interpreter's deposition and attempted to point out where the interpreter had erred. When the prosecutor objected to this discussion on the ground that counsel was not qualified as an expert witness, his "presentation of the issue quickly disintegrated." 926 F. 2d 1492, 1499 (CA9 1991). The state court had no other relevant evidence before it when it determined that Tamayo-Reyes actually understood the charge to which he was pleading.

Contrary to the impression conveyed by this Court's opinion, the question whether a federal court should defer to this sort of dubious "factfinding" in addressing a habeas corpus

petition is one with a long history behind it, a history that did not begin with *Townsend* v. *Sain.*

## II

### A

The availability and scope of habeas corpus have changed over the writ's long history, but one thing has remained constant: Habeas corpus is not an appellate proceeding, but rather an original civil action in a federal court. See, *e. g.,* *Browder* v. *Director, Dept. of Corrections of Ill.,* 434 U. S. 257, 269 (1978). It was settled over a hundred years ago that "[t]he prosecution against [a criminal defendant] is a criminal prosecution, but the writ of habeas corpus . . . is not a proceeding in that prosecution. On the contrary, it is a new suit brought by him to enforce a civil right." *Ex parte Tom Tong,* 108 U. S. 556, 559–560 (1883). Any possible doubt about this point has been removed by the statutory procedure Congress has provided for the disposition of habeas corpus petitions, a procedure including such nonappellate functions as the allegation of facts, 28 U. S. C. § 2242, the taking of depositions and the propounding of interrogatories, § 2246, the introduction of documentary evidence, § 2247, and, of course, the determination of facts at evidentiary hearings, § 2254(d).

To be sure, habeas corpus has its own peculiar set of hurdles a petitioner must clear before his claim is properly presented to the district court. The petitioner must, in general, exhaust available state remedies, § 2254(b), avoid procedural default, *Coleman* v. *Thompson,* 501 U. S. 722 (1991), not abuse the writ, *McCleskey* v. *Zant,* 499 U. S. 467 (1991), and not seek retroactive application of a new rule of law, *Teague* v. *Lane,* 489 U. S. 288 (1989). For much of our history, the hurdles were even higher. See, *e. g., Ex parte Watkins,* 3 Pet. 193, 203 (1830) (habeas corpus available only to challenge jurisdiction of trial court). But once they have been surmounted—once the claim is properly before the dis-

trict court—a habeas petitioner, like any civil litigant, has had a right to a hearing where one is necessary to prove the facts supporting his claim. See, *e. g., Hawk* v. *Olson,* 326 U. S. 271, 278–279 (1945); *Holiday* v. *Johnston,* 313 U. S. 342, 351–354 (1941); *Walker* v. *Johnston,* 312 U. S. 275, 285–287 (1941); *Moore* v. *Dempsey,* 261 U. S. 86, 92 (1923). Thus when we observed in *Townsend* v. *Sain,* 372 U. S., at 312, that "the opportunity for redress . . . presupposes the opportunity to be heard, to argue and present evidence," we were saying nothing new. We were merely restating what had long been our understanding of the method by which contested factual issues raised on habeas should be resolved.

Habeas corpus has always differed from ordinary civil litigation, however, in one important respect: The doctrine of res judicata has never been thought to apply. See, *e. g., Brown* v. *Allen,* 344 U. S. 443, 458 (1953); *Darr* v. *Burford,* 339 U. S. 200, 214 (1950); *Waley* v. *Johnston,* 316 U. S. 101, 105 (1942); *Salinger* v. *Loisel,* 265 U. S. 224, 230 (1924). A state prisoner is not precluded from raising a federal claim on habeas that has already been rejected by the state courts. This is not to say that state court factfinding is entitled to no weight, or that every state prisoner has the opportunity to relitigate facts found against him by the state courts. Concerns of federalism and comity have pushed us from this extreme just as the importance of the writ has repelled us from the opposite extreme, represented by the strict application of res judicata. Instead, we have consistently occupied the middle ground. Even before *Townsend,* federal courts deferred to state court findings of fact where the federal district judge was satisfied that the state court had fairly considered the issues and the evidence and had reached a satisfactory result. See, *e. g., Brown, supra,* at 458, 465; *Frank* v. *Mangum,* 237 U. S. 309, 332–336 (1915). But where such was not the case, the federal court entertaining the habeas petition would examine the facts anew. See, *e. g., Ex parte Hawk,* 321 U. S. 114, 116, 118 (1944); *Moore, supra,*

at 92.   In *Hawk*, for example, we stated that a state prisoner would be entitled to a hearing, 321 U. S., at 116, "where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised . . . because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate."   *Id.*, at 118.   In *Brown*, we explained that a hearing may be dispensed with only "[w]here the record of the application affords an adequate opportunity to weigh the sufficiency of the allegations and the evidence, and no unusual circumstances calling for a hearing are presented."   344 U. S., at 463.

*Townsend* "did not launch the Court in any new directions," Weisselberg, Evidentiary Hearings in Federal Habeas Corpus Cases, 1990 B. Y. U. L. Rev. 131, 150, but it clarified how the district court should measure the adequacy of the state court proceeding.   *Townsend* specified six circumstances in which one could not be confident that "the state-court trier of fact has after a full hearing reliably found the relevant facts."   372 U. S., at 313.   The Court held that a habeas petitioner is entitled to an evidentiary hearing on his factual allegations if

> "(1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing."   *Ibid.*

That these principles marked no significant departure from our prior understanding of the writ is evident from the view expressed by the four dissenters, who had "no quarrel with the Court's statement of the basic governing principle which

should determine whether a hearing is to be had in a federal habeas corpus proceeding," but disagreed only with the Court's attempt "to erect detailed hearing standards for the myriad situations presented by federal habeas corpus applications." *Id.*, at 326–327 (Stewart, J., dissenting). *Townsend* thus did not alter the federal courts' practice of holding an evidentiary hearing unless the state court had fairly considered the relevant evidence.

The Court expressed concern in *Townsend* that a petitioner might abuse the fifth circumstance described in the opinion, by deliberately withholding evidence from the state factfinder in the hope of finding a more receptive forum in a federal court. *Id.*, at 317. To discourage this sort of disrespect for state proceedings, the Court held that such a petitioner would not be entitled to a hearing. *Ibid.* The *Townsend* opinion did not need to address this concern in much detail, because a similar issue was discussed at greater length in another case decided the same day, *Fay* v. *Noia*, 372 U. S. 391, 438–440 (1963). The *Townsend* opinion thus merely referred the reader to the discussion in *Fay*, where a similar exception was held to bar a state prisoner from habeas relief where the prisoner had intentionally committed a procedural default in state court. See *Townsend, supra*, at 317.

Nearly 30 years later, the Court implies that *Fay* and *Townsend* must stand or fall together. *Ante*, at 5–8. But this is not so: The *Townsend* Court did *not* suggest that the issues in *Townsend* and *Fay* were identical, or that they were so similar that logic required an identical answer to each. *Townsend* did not purport to rely on *Fay* as authority; it merely referred to *Fay*'s discussion as a shorthand device to avoid repeating similar analysis. Indeed, reliance on *Fay* as authority would have been unnecessary. *Townsend* was essentially an elaboration of our prior cases regarding the holding of hearings in federal habeas cases; *Fay* represented an overruling of our prior cases regarding procedural

defaults. See *Coleman* v. *Thompson,* 501 U. S., at 744–747; *Wainwright* v. *Sykes,* 433 U. S. 72, 82 (1977).

As the Court recognizes, *ante,* at 6, we have applied *Townsend's* analysis ever since. See, *e. g., Vasquez* v. *Hillery,* 474 U. S. 254, 258 (1986); *Cuyler* v. *Sullivan,* 446 U. S. 335, 341– 342 (1980); *Jackson* v. *Virginia,* 443 U. S. 307, 318 (1979); *LaVallee* v. *Delle Rose,* 410 U. S. 690, 693–694 (1973); *Boyd* v. *Dutton,* 405 U. S. 1, 3 (1972); *Procunier* v. *Atchley,* 400 U. S. 446, 451 (1971). But we have not, in my view, been unjustifiably clinging to a poorly reasoned precedent. While we properly abandoned *Fay* because it was inconsistent with prior cases that represented a better-reasoned balance of state and federal interests, the same cannot be said of *Townsend.*

The Court today holds that even when the reliability of state factfinding is doubtful because crucial evidence was not presented to the state trier of fact, a habeas petitioner is ordinarily not entitled to an opportunity to prove the facts necessary to his claim. This holding, of course, directly overrules a portion of *Townsend,* but more than that, I think it departs significantly from the pre-*Townsend* law of habeas corpus. Even before *Townsend,* when a habeas petitioner's claim was properly before a federal court, and when the accurate resolution of that claim depended on proof of facts that had been resolved against the petitioner in an unreliable state proceeding, the petitioner was entitled to his day in federal court. As Justice Holmes wrote for the Court, in a case where the state courts had rejected—under somewhat suspicious circumstances—the petitioner's allegation that his trial had been dominated by an angry mob: "[I]t does not seem to us sufficient to allow a Judge of the United States to escape the duty of examining the facts for himself when if true as alleged they make the trial absolutely void." *Moore,* 261 U. S., at 92. The class of petitioners eligible to present claims on habeas may have been narrower in days gone by, and the class of claims one might present may have

been smaller, but once the claim was properly before the court, the right to a hearing was not construed as narrowly as the Court construes it today.

## B

Instead of looking to the history of the right to an evidentiary hearing, the Court simply borrows the cause and prejudice standard from a series of our recent habeas corpus cases. *Ante*, at 5–8. All but one of these cases address the question of when a habeas claim is properly before a federal court despite the petitioner's procedural default. See *Coleman* v. *Thompson, supra; Murray* v. *Carrier,* 477 U. S. 478 (1986); *Reed* v. *Ross,* 468 U. S. 1 (1984); *Engle* v. *Isaac,* 456 U. S. 107 (1982); *Wainwright* v. *Sykes, supra; Francis* v. *Henderson,* 425 U. S. 536 (1976). The remaining case addresses the issue of a petitioner's abuse of the writ. See *McCleskey* v. *Zant,* 499 U. S. 467 (1991). These cases all concern the question whether the federal court will *consider* the merits of the claim, that is, whether the court has the *authority* to upset a judgment affirmed on direct appeal. So far as this threshold inquiry is concerned, our respect for state procedural rules and the need to discourage abuse of the writ provide the justification for the cause and prejudice standard. As we have said in the former context: "[T]he Great Writ imposes special costs on our federal system. The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Engle, supra,* at 128.

The question we are considering here is quite different. Here, the Federal District Court has already determined that it will consider the claimed constitutional violation; the only question is how the court will go about it. When it

comes to determining whether a hearing is to be held to resolve a claim that is already properly before a federal court, the federalism concerns underlying our procedural default cases are diminished somewhat. By this point, our concern is less with encroaching on the territory of the state courts than it is with managing the territory of the federal courts in a manner that will best implement their responsibility to consider habeas petitions. Our adoption of a cause and prejudice standard to resolve the first concern should not cause us reflexively to adopt the same standard to resolve the second. Federalism, comity, and finality are all advanced by declining to permit relitigation of claims in federal court in certain circumstances; these interests are less significantly advanced, once relitigation properly occurs, by permitting district courts to resolve claims based on an incomplete record.

### III

The Court's decision today cannot be reconciled with subsection (d) of 28 U. S. C. § 2254, which Congress enacted only three years after we decided *Townsend*. Subsection (d) provides that state court factfinding "shall be presumed to be correct, unless the applicant shall establish" one of eight listed circumstances. Most of these circumstances are taken word for word from *Townsend*, including the one at issue here; § 2254(d)(3) renders the presumption of correctness inapplicable where "the material facts were not adequately developed at the State court hearing." The effect of the presumption is to augment the habeas petitioner's burden of proof. Where state factfinding is presumed correct, the petitioner must establish the state court's error "by convincing evidence"; where state factfinding is not presumed correct, the petitioner must prove the facts necessary to support his claim by only a preponderance of the evidence. *Sumner* v. *Mata*, 449 U. S. 539, 551 (1981).

Section 2254(d) is not, in the strict sense, a codification of our holding in *Townsend*. The listed circumstances in

*Townsend* are those in which a hearing must be held; the nearly identical listed circumstances in § 2254(d) are those in which facts found by a state court are not presumed correct. But the two are obviously intertwined. If a habeas petitioner fulfills one of the *Townsend* requirements he will be entitled to a hearing, and by virtue of fulfilling a *Townsend* requirement he will necessarily have also fulfilled one of the § 2254(d) requirements, so that at his hearing the presumption of correctness will not apply. On the other hand, if the petitioner has not fulfilled one of the *Townsend* requirements he will generally not have fulfilled the corresponding § 2254(d) requirement either, so he will be entitled neither to a hearing nor to an exception from the presumption of correctness. *Townsend* and § 2254(d) work hand in hand: Where a petitioner has a right to a hearing he must prove facts by a preponderance of the evidence, but where he has no right to a hearing he must prove facts by the higher standard of convincing evidence. Without the opportunity for a hearing, it is safe to assume that this higher standard will be unattainable for most petitioners. See L. Yackle, Postconviction Remedies 508–509 (1981).

In enacting a statute that so closely parallels *Townsend*, Congress established a procedural framework that relies upon *Townsend*'s continuing validity. In general, therefore, overruling *Townsend* would frustrate the evident intent of Congress that the question of when a hearing is to be held should be governed by the same standards as the question of when a federal court should defer to state court factfinding. In particular, the Court's adoption of a "cause and prejudice" standard for determining whether the material facts were adequately developed in state proceedings will frustrate Congress' intent with respect to that *Townsend* circumstance's statutory analog, § 2254(d)(3).

For a case to fit within this *Townsend* circumstance but none of *Townsend*'s other circumstances, the case will very likely be like this one, where the material facts were not

developed because of attorney error. Any other reason the material facts might not have been developed, such as that they were unknown at the time or that the State denied a full and fair opportunity to develop them, will almost certainly be covered by one of *Townsend*'s other circumstances. See *Townsend*, 372 U. S., at 313. We have already held that attorney error short of constitutionally ineffective assistance of counsel does not amount to "cause." See *Murray* v. *Carrier*, 477 U. S., at 488. As a result, the practical effect of the Court's ruling today will be that for a case to fall within *Townsend*'s fifth circumstance but no other—for a petitioner to be entitled to a hearing on the ground that the material facts were not adequately developed in state court but on no other ground—the petitioner's attorney must have rendered constitutionally ineffective assistance in presenting facts to the state factfinder.

This effect is more than a little ironic. Where the state factfinding occurs at the trial itself, counsel's ineffectiveness will not just entitle the petitioner to a hearing—it will entitle the petitioner to a new trial. Where, as in this case, the state factfinding occurs at a postconviction proceeding, the petitioner *has* no constitutional right to the effective assistance of counsel, so counsel's poor performance can *never* constitute "cause" under the cause and prejudice standard. *Coleman* v. *Thompson*, 501 U. S., at 752. After today's decision, the only petitioners entitled to a hearing under *Townsend*'s fifth circumstance are the very people who do not need one, because they will have already obtained a new trial or because they will already be entitled to a hearing under one of the other circumstances. The Court has thus rendered unusable the portion of *Townsend* requiring hearings where the material facts were not adequately developed in state court.

As noted above, the fact that § 2254(d)(3) uses language identical to the language we used in *Townsend* strongly suggests that Congress presumed the continued existence of this

portion of *Townsend.* Moreover, the Court's application of a cause and prejudice standard creates a conundrum regarding how to interpret § 2254(d)(3). If a cause and prejudice standard applies to § 2254(d)(3) as well as *Townsend*'s fifth circumstance, then the Court has rendered § 2254(d)(3) superfluous for the same reason this part of *Townsend* has become superfluous. While we may deprive portions of our own prior decisions of any effect, we generally may not, of course, do the same with portions of statutes. On the other hand, if a cause and prejudice standard does not apply to § 2254(d)(3), we will have uncoupled the statute from the case it was intended to follow, and there will likely be instances where a petitioner will be entitled to an exception from the presumption of correctness but will not be entitled to a hearing. This result does not accord with the evident intent of Congress that the first inquiry track the second. Reconciliation of these two questions is now left to the district courts, who still possess the discretion, which has not been removed by today's opinion, to hold hearings even where they are not mandatory. See *Townsend, supra,* at 318.

For these reasons, I think § 2254(d) presumes the continuing validity of our decision in *Townsend,* including the portion of the decision that recognized a "deliberate bypass" exception to a petitioner's right to a hearing where the material facts were not adequately developed in the state court.

Jose Tamayo-Reyes alleges that he pleaded *nolo contendere* to a crime he did not understand. He has exhausted state remedies, has committed no procedural default, has properly presented his claim to a Federal District Court in his first petition for a writ of habeas corpus, and would be entitled to a hearing under the standard set forth in *Townsend.* Given that his claim is properly before the District Court, I would not cut off his right to prove his claim at a hearing. I respectfully dissent.

JUSTICE KENNEDY, dissenting.

By definition, the cases within the ambit of the Court's holding are confined to those in which the factual record developed in the state-court proceedings is inadequate to resolve the legal question. I should think those cases will be few in number. *Townsend* v. *Sain,* 372 U. S. 293, 318 (1963), has been the law for almost 30 years and there is no clear evidence that this particular classification of habeas proceedings has burdened the dockets of the federal courts. And in my view, the concept of factual inadequacy comprehends only those petitions with respect to which there is a realistic possibility that an evidentiary hearing will make a difference in the outcome. This serves to narrow the number of cases in a further respect and to ensure that they are the ones, as JUSTICE O'CONNOR points out, in which we have valid concerns with constitutional error.

Our recent decisions in *Coleman* v. *Thompson,* 501 U. S. 722 (1991), *McCleskey* v. *Zant,* 499 U. S. 467 (1991), and *Teague* v. *Lane,* 489 U. S. 288 (1989), serve to protect the integrity of the writ, curbing its abuse and ensuring that the legal questions presented are ones which, if resolved against the State, can invalidate a final judgment. So we consider today only those habeas actions which present questions federal courts are bound to decide in order to protect constitutional rights. We ought not to take steps which diminish the likelihood that those courts will base their legal decision on an accurate assessment of the facts. For these reasons and all those set forth by JUSTICE O'CONNOR, I dissent from the opinion and judgment of the Court.