[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION AND ORDERS RE: MOTION TO DISMISS ANDMOTIONS FOR SANCTIONS
INTRODUCTION
The respondent, through its counsel, has filed a Motion to Dismiss and Motion for Sanctions. The respondent seeks to enjoin the petitioner from filing any further Habeas Corpus or civil actions, without prior leave of court. Petitioner appears pro se
in both files.
The petitioner was specifically put on notice of the nature and extent of respondent's request, on the record, at a court hearing on October 22, 1996. After some discussion on the record, some exhibits were introduced in evidence. At the petitioner's request, the case was continued to allow him time to prepare more fully for the hearing.
The case was continued to November 20, 1996. Again, the Court confirmed notice to the petitioner of the actual nature of the proceedings. A hearing was held that day. The case was then continued to November 27, 1996. The hearing was completed on that date after both sides rested.
The Court then took the case under advisement.
FACTS
The petitioner, John J. McCarthy, is no stranger to the courts. Since his incarceration, McCarthy has filed approximately 136 matters in the U.S. District Court of Connecticut.[1]
According to Magistrate Holly Fitzsimmons of the United States District Court of Connecticut, McCarthy files numerous pleadings and unnecessary motions in each case. For example, Magistrate Fitzsimmons noted that in a six month period ending September 30, 1996, the District Court acted on 99 motions filed in McCarthy cases.
The Connecticut Superior Court is not immune to McCarthy's CT Page 2874 tactics. Prior to October 3, 1996, McCarthy filed eleven petitions for writs of habeas corpus with this court. The Court dismissed seven of these petitions summarily, and disposed of one on the merits.[2] McCarthy withdrew one petition and he currently has two pending files: McCarthy v. Warden, Superior Court, Judicial District of Tolland, Docket No. 002044 andMcCarthy v. Warden, Superior Court, Judicial District of Tolland, Docket No. 002084. On October 3, 1996, McCarthy filed twelve additional petitions for writs of habeas corpus in this district. McCarthy then filed another petition on October 22, 1996. These thirteen petitions have not yet been docketed by the court, because of these pending proceedings. In total, this court has either acted on or will have to act on twenty-four petitions for writs of habeas corpus filed by McCarthy.
McCarthy also employs other tactics in his Superior Court cases that he has used in his District Court filings. In most cases, McCarthy files scores of pleadings and motions. The vast majority of these pleadings and motions lack any merit. Furthermore, McCarthy constantly brings suit against the lawyers and judges associated with each case. Since 1986, Assistant Attorney General Steven Strom has been representing many employees of the Connecticut Department of Corrections, including prison wardens and the Commissioner. According to Attorney Strom, one of the very first cases assigned to him in the fall of 1986 was a "purported civil rights action filed by John J. McCarthy" and, ever since then, he has handled McCarthy litigation virtually without interruption. (Attorney Steven Strom's Affidavit, September 24, 1996, para. 2, copy attached as Exhibit A).
The court also notes that McCarthy recently pleaded nollocontendere to three counts of Forgery in the 2nd degree, in this Judicial District. In those cases, the State alleged that McCarthy signed a clerk's name to some documents and a Superior Court Judge's name to others in connection with a pending Habeas Corpus action. (State v. McCarthy, docket number CR19-96-60130).
He was sentenced to one year on each charge on September 12, 1996.
This court recently became aware of McCarthy's intentions surrounding his voluminous filings. On September 10, 1996, Attorney Strom received a letter from McCarthy in which McCarthy states, "[n]obody cares about court or fag judges or you. As long as I wast [sic] your time and the courts I'm happy . . . . What a CT Page 2875 bunch of suckers . . . . You think you can play me. And all the time I play you. Like the suckers that you are. And it don't stop and won't stop until I go home. I got a new nice waive coming. You'll enjoy after all if it wassant [sic] for me you'd be out of a job plus I get to fuck it up for the prisoners cause now they got to wait." McCarthy then states that he has "fifty new ones coming . . . and fifty after that."[3]
Judge Bishop also recently received a letter from McCarthy stating, "[w]hy you wast [sic] my time in court . . . . Nobody gives a fuck about you or your phoney robe or courthouse. You think I care for a sucker like you. I'm suing you niggar, you and the jew. Nobody respects you, only suckers. I'm a man and know you and the system well. Just there to wast [sic] your time and take a ride."[4] As a result of this letter, Judge Bishop recused himself from deciding these Motions to Dismiss and Sanctions. He has also recused himself from deciding any other McCarthy cases, until these motions are decided.
For the past ten years, McCarthy has wasted both the Federal and State Courts' time and resources. McCarthy's words and actions directed toward this court, its judges and the attorneys associated with each case demonstrate an intent on McCarthy's part to abuse the judicial system for his own personal benefit and amusement. The above two letters further establish that McCarthy intends to file additional frivolous petitions with this court for the sole purpose of wasting this court's resources and to keep the court from hearing other prisoner's petitions in a timely fashion.[5] Accordingly, this court must now take action to stop McCarthy's attack.
ISSUE
Should the court enjoin the petitioner from filing any more petitions for writs of habeas corpus or any further civil actions without prior leave of court?
DISCUSSION
"The writ of habeas corpus, as a remedy for illegal restraint, is a prerogative common-law writ providing a special and extraordinary remedy." Wojculewicz v. Cummings,143 Conn. 624, 627, 124 A.2d 886 (1956). "It issues as a matter of right but not as a matter of course." Id. The writ of habeas corpus "is the most celebrated writ in the English law." (Internal quotation CT Page 2876 marks omitted.) Fay v. Noia, 372 U.S. 391, 400, 83 S.Ct. 822,9 L.Ed.2d 837 (1963), overruled on other grounds, Keeney v.Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). "It is a writ antecedent to statute, and throwing its root deep into the genius of our common law . . . . It is perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." (Internal quotation marks omitted.) Id.
In the federal courts, many petitioners, including McCarthy, have abused the writ of habeas corpus by filing frivolous petitions that require the courts to expend their limited resources. The federal courts, in response, have employed various measures to deter these abuses.
The Supreme Court of the United States in In Re McDonald,489 U.S. 180, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989) effectively curtailed a petitioner's ability to continue to bring meritless petitions before the court. The court noted that the petitioner had made 73 separate filings with the court, 19 of which were petitions for extraordinary writs. In Re McDonald, supra, 180-81. The particular matter then before the court was a petition for a writ of habeas corpus arising out of a past conviction. Id., 182-83. The petitioner argued that his constitutional rights were violated by the conviction because the state failed to prove an essential element of the crime charged. Id., 183. The court explained that the "[p]etitioner has put forward this same argument — unsuccessfully — in at least four prior filings with the Court. . . ." Id. With the petition, the petitioner requested permission to proceed in forma pauperis. Id, 180.
In response to the petitioner's request to proceed in forma pauperis, the court noted that "[p]aupers have been an important and valued — part of the Court's docket . . . ." (Citations omitted.) Id., 184. The Court, however, stated that "paupers filing pro se petitions are not subject to the financial considerations — filing fees and attorney's fees — that deter other litigants from filing frivolous petitions. Every paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice. The continual processing of petitioner's frivolous requests for extraordinary writs does not promote that CT Page 2877 end." Id. Accordingly, to inhibit the petitioner from filing any more frivolous writs in the future, the Court issued an order preventing the petitioner from proceeding in forma pauperis when seeking writs of habeas corpus or any other extraordinary writs from the Court. Id.
In support of its decision, the Court in In Re McDonald cited various lower federal courts that "have issued orders intended to curb serious abuses by person proceeding in forma pauperis." Id., 184. Specifically, the Court quoted from In re Martin-Trigona,
737 1254 (2d Cir. 1984) where the Court of Appeals for the Second Circuit stated that `"[f]ederal courts have both the inherent power and constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."' In Re McDonald, supra, 184 n. 8, quoting, In re Martin-Trigona, supra, 1261. Accordingly, it appears that the Supreme Court of the United States approves of the measures used in In re Martin-Trigona to curtail a petitioner's ability to bring frivolous petitions for writs of habeas corpus.
In In re Martin-Trigona, the appellant, Anthony Martin-Trigona, appealed an order of the District Court that enjoined him from filing any action in state or federal court without meeting certain conditions. In re Martin-Trigona, supra, 737 F.2d 1256. The Court of Appeals noted that the District Court possessed the power to make such an order because "[i]f such power did not exist, or if its exercise were somehow dependent upon the actions of another branch of government or upon the entitlement of a private party to injunctive relief, the independence and constitutional role of Article III courts would be endangered." Id., 1261. "Were litigants free to resort to Martin-Trigona's tactics with impunity, the results would be potentially to render many federal laws unenforceable in federal courts or enforceable only at great cost, to chill litigants from seeking relief to which they are entitled, to deter counsel from representation in cases involving malicious and litigious parties, to make it more difficult to recruit personnel for all positions in the judicial branch, and finally, to bring the entire system of justice to a halt, thus depriving all other litigants of their right to an expeditious adjudication of good faith federal claims." Id., 1261-62. Although the court concluded that the breadth of the injunction was improper because it prevented Martin-Trigona from filing claims in state courts, a procedure which did not effect the federal courts' ability to CT Page 2878 adjudicate their cases, the Court of Appeals stated that "[i]njunctive relief was fully appropriate . . . ." Id., 1262.
The Connecticut Superior Court, much like the federal courts, is a constitutional court created by the constitution of Connecticut. State v. Stallings, 154 Conn. 272, 278, 224 A.2d 718
(1966). This court, as part of the judicial department, is an independent branch of Connecticut's government possessing "a sphere of action distinct from that of the legislative and executive departments." State v. Clemente, 166 Conn. 501, 514,353 A.2d 723 (1974). Accordingly, similar to the federal courts, the Connecticut Superior Court must also possess the inherent power to protect its jurisdiction so that the court may continue to carry out its state constitutional mandate.
McCarthy argues that the court does not have the power to enjoin him from filing any more petitions or cases because no statute or rule provides for such a sanction. "There are three possible sources for the authority of courts to sanction counsel and pro se parties. These are inherent power, statutory power, and the power conferred by published rules of the court. The power of a court to manage its dockets and cases by the imposition of sanctions to prevent undue delays in the disposition of pending cases is of ancient origin, having its roots in judgments. entered at common law . . . ." (Citations omitted; internal quotation marks omitted.) In the Matter ofPresnick, 19 Conn. App. 340, 347, 563 A.2d 299 (1989), cert. denied, 213 Conn. 801, 567 A.2d 833 (1989). "That power may be expressly recognized by rule or statute but it exists independently of either and arises because of the control that must necessarily be vested in courts in order for them to be able to manage their own affairs so as to achieve an orderly and expeditious disposition of cases." Id. "Simply stated, the inherent powers of . . . courts are those which are necessary to the exercise of all others." (Internal quotation marks omitted.) Id.
When a person files numerous petitions with the court for the purpose of wasting the court's time and preventing the court from hearing other cases in a timely fashion, the court has the obligation and the inherent power to terminate this attack to protect its ability to carry out its constitutional function. Id. If the court did not possess this power and was dependent upon another branch of government to protect the court, then litigants, such as McCarthy, could continue to attack the court's CT Page 2879 ability to function with impunity to the point where the court's orders and the laws of the state of Connecticut could no longer have any affect.
Furthermore, the Supreme Court of Connecticut has stated, "[n]othing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, to entertain collateral proceedings whose only purpose is to vex, harass, or delay . . . . This court would not afford the trial courts of this state less protection from needless vexation than the United States Supreme Court would grant federal district courts." (Citations omitted.) Negron v. Warden, 180 Conn. 153,166 n. 6, 429 A.2d 841 (1980). The Supreme Court of the United States cited the District Court Judge's exercise of inherent power in the case of In re Martin-Trigona with approval, and the Supreme Court of Connecticut has indicated that it would provide the same amount of protection from vexatious filings to the Superior Court as is granted to the federal courts by the Supreme Court of the United States. Therefore, this Court possesses the inherent power to enjoin McCarthy from filing any more writs of habeas corpus and civil actions, without prior leave from the court.
Moreover, the Supreme Court of Connecticut has explained that "[i]t is well settled that equity may enjoin vexatious litigation." Bridgeport Hydraulic Co. v. Pearson, 139 Conn. 186,194, 91 A.2d 778 (1952). "This power of equity exists independently of its power to prevent a multiplicity of actions. It is based on the fact that it is inequitable for a litigant to harass an opponent, not for the attainment of justice, but out of malice . . . . To be vexatious, litigation must be prosecuted not only without probable cause but also with malice." Id.
Clearly, this court has the power to enjoin a person from filing malicious litigation at the request of an opponent. This court, however, should not have to await this request when the attack is made for the additional purpose of harassing the court. The Superior Court is part of an independent branch of government created by the constitution of Connecticut. State v. Clemente,
supra, 166 Conn. 514. Although allied with the executive and legislative branches, as an independent governmental entity, the Superior Court must possess its own defenses to ward off any direct attack on its constitutional powers and obligations. In reMartin-Trigona, supra, 737 F.2d 1261. The equitable powers set forth in Bridgeport Hydraulic Co. v. Pearson further permit this CT Page 2880 court, sua sponte, to enjoin a person from filing multiple suits, out of malice and without probable cause, for the purpose of harassing the court.
McCarthy has filed numerous petitions for writs of habeas corpus with this court. He has also brought suit against the judges and lawyers associated with most of his cases. The letters that he sent to Attorney Strom and Judge Bishop demonstrate that it is his intent to continue to bring frivolous petitions and to sue the involved parties in order to waste the court's time and to prevent it from carrying out its duties. McCarthy's intent is nothing less than malicious. His letters and actions, show his total disregard for the Judicial System.
McCarthy has stated that he is or will be filing more petitions and civil actions for the purpose of harassing the court and its officers.[6] It is clear that he is prosecuting these matters without any probable cause. This fact becomes more evident since most of his cases have been dismissed for lack of merit. Accordingly, McCarthy has demonstrated that it is his intent to maliciously prosecute further cases without probable cause. McCarthy's actions are a direct attack on this court's jurisdiction and its ability to carry out its constitutional obligations. Therefore, the court must enjoin McCarthy from filing any more actions, either civil suits or petitions for writs of habeas corpus, without prior leave from the court. This action is taken to stop the harassment by Mr. McCarthy, to protect the integrity of the Court, and to safeguard the rights of other litigants.
The Court notes that McCarthy has filed a case attacking the Department of Correction policy denying "Good Time" credit to inmates while in segregation. There are several other inmates attacking the same policy.
Judge Bishop has scheduled two of those cases as "test cases". Most likely McCarthy's case will be controlled by the decision in these cases, this will be true, whether or not his cases are dismissed. He will not be prejudiced by not being able to pursue his own case.
ORDER
Respondent's Motion to Dismiss and For Sanctions is GRANTED.
CT Page 2881
The petition in docket number CV95-2044 is DISMISSED;
The petition in docket number CV 95-2084 is DISMISSED;
Each remaining petition filed by Mr. McCarthy, previously undocketed, shall be given a docket number by the clerk. Each of those petitions is hereby DISMISSED.
IT IS FURTHER ORDERED that John J. McCarthy is permanently enjoined from filing any new civil actions or writs of habeas corpus in any Superior Court of the State of Connecticut without first obtaining leave from a Judge of such Court.
In seeking such leave to file, John J. McCarthy must comply with each of the following requirements:
First, he must file with the complaint or writ a motion captioned, "Motion Pursuant to Court Order Seeking Leave to File."
Second, as Exhibit 1 to that motion, he must attach a copy of this order and memorandum of decision (including attached exhibits).
Third, as Exhibit 2 to that motion, he must attach a sworn affidavit certifying that the claim he wishes to present is a new claim never before raised by him in any court.
Fourth, as Exhibit 3 to that motion, he must identify by listing the full caption of each and every suit or writ of habeas corpus previously filed by him or on his behalf in any court against each and every defendant to the new suit or writ he wishes to file.
IT IS FURTHER ORDERED that John J. McCarthy is hereby permanently enjoined from the filing of any document, motion, affidavit, declaration, or pleading in any case to which he is not a party without first seeking leave of the court. Leave of the court shall only be obtained by lodging with the court the document sought to be filed, together with a statement setting forth the name(s) of the person(s) to be served and the address(es) at which service will be made, and a motion captioned, "Motion Pursuant to Court Order Seeking Leave to File," to which a copy of this order and memorandum of decision (including attached exhibits) shall be attached as Exhibit 1. CT Page 2882 Such leave must be obtained before the filing (by John J. McCarthy) of any document, motion, affidavit, declaration, or pleading in any case to which John J. McCarthy is not a party in any Superior Court of the State of Connecticut.
IT IS FURTHER ORDERED that John J. McCarthy is hereby permanently enjoined from serving upon any person, natural or legal, or any other entity, any document, motion, affidavit, declaration, or other paper purporting to be served in connection with any legal action unless such an action has, in fact, been filed in a court of the State of Connecticut. The identity of the action must be apparent on the face of the paper. Furthermore, the document, motion, affidavit, declaration, or other paper must be properly filed with the court indicated thereon in compliance with the preceding paragraphs of this order.
Failure to comply with the terms of this order may be sufficient grounds for a court to deny any motion for leave to file made by John J. McCarthy. Failure of John J. McCarthy to advise a court (in which he has filed a lawsuit or writ) of this order may be considered by such court as a sufficient defense to dismiss such lawsuit or writ.
This order is entered with the following limitations. Nothing in this order shall be construed as having any effect on John J. McCarthy's ability to defend himself in any criminal action, except that McCarthy is enjoined from filing any more post conviction writs of habeas corpus without first obtaining leave of the Superior Court of the State of Connecticut pursuant to this order. Nothing in this order shall be construed as affecting John J. McCarthy's access to the Appellate Court or the Supreme Court of the State of Connecticut, to any Federal Court, or to the Supreme Court of the United States.
BY THE COURT,
Hon. Jonthan J. Kaplan