ORDER DENYING PETITION FOR WRIT OF HAREAS CORPUS AND DISMISSING PETITION WITH PREJUDICE.
 

 WILSON, District Judge.
 

 I. Introduction
 

 Petitioner was convicted of second degree robbery while armed with a firearm (Cal.Penal Code § 211, 12022(a)(1)) in Los Angeles County Superior Court on March 16, 1998, and was sentenced to thirty-four years to life in state prison. (Clerk’s Transcript (“CT”) 107, 139-40, 160-62.)
 
 *MCCCX
 
 The California Court of Appeal upheld his conviction on February 7, 2000, and the California Supreme Court denied review on April 19, 2000. (Lodgment Nos. 4 and 8.) On April 11, 2001, Petitioner filed this writ of habeas corpus for a person in state custody challenging the validity of his conviction on the grounds that the prosecutor improperly used peremptory challenges to dismiss African-American jurors in violation of
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and its progeny.
 

 The Magistrate Judge ordered an evi-dentiary hearing on the matter and appointed counsel for Petitioner, but ultimately vacated the evidentiary hearing on a motion from Respondent, presumably on the grounds that no pertinent evidence could be produced at the hearing, though the Magistrate Judge’s minute order does not specify.
 
 [1]
 
 Following Respondent’s objections to the original Report and Recommendation (“R & R”), the Magistrate Judge issued a Superseding Report and Recommendation (“SR & R”) recommending that the writ of habeas corpus be conditionally granted, to which Respondent has again filed objections.
 

 II. Background
 

 During voir dire, the prosecutor used three of his first four peremptory challenges (and three out of five total) to remove three of the four African-American jurors “on the panel.” Following the challenge to the third African-American, defense counsel objected under
 
 People v. Wheeler,
 
 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978), the state-law “parallel” to
 
 Batson.
 
 Applying the test from
 
 Wheeler
 
 in accordance with
 
 People v. Bernard,
 
 27 Cal.App.4th 458, 32 Cal.Rptr.2d 486 (1994), the trial court held that no prima facie case had been made (implying that the defense had not demonstrated a “strong likelihood” of discrimination on the part of the prosecutor), and therefore declined to ask the prosecutor for legitimate reasons for the challenges, and in fact, cut off the prosecutor who apparently was attempting to proffer such reasons out of a concern to make sure that the record was “squeaky clean.” (Reporter’s Transcript (“RT”) 236-40.)
 

 One large source of difficulty in this case is the tension between
 
 Batson
 
 and
 
 Wheeler. Wheeler’s
 
 “strong likelihood” test had been interpreted to require a higher stan
 
 *MCCCXI
 
 dard than
 
 Batson’s
 
 “reasonable inference” of discrimination in order for a prima facie case to be made.
 
 Batson,
 
 476 U.S. at 96, 106 S.Ct. 1712;
 
 Bernard.
 
 The California Supreme Court resolved this tension in August 2000 when it decided
 
 People v. Box,
 
 23 Cal.4th 1153, 99 Cal.Rptr.2d 69, 5 P.3d 130 (2000), interpreting the “strong likelihood” language from
 
 Wheeler
 
 to mean the same as the “reasonable inference” language from
 
 Batson.
 
 Petitioner was tried in early 1998 under the
 
 Bernard
 
 interpretation of “strong likelihood.” In February 2000, the Ninth Circuit expressly held that the then-existing
 
 Wheeler
 
 standard was inconsistent -with federal law under
 
 Batson. Wade v. Terhune,
 
 202 F.3d 1190, 1195-1197 (2000). In reviewing state court decisions that have applied the “strong likelihood” standard prior to
 
 Box,
 
 federal courts should review
 
 de novo
 
 the state court’s decision as to whether a pri-ma facie case was made.
 
 Cooperwood v. Cambra,
 
 245 F.3d 1042, 1047 (9th Cir.2001);
 
 Wade,
 
 202 F.3d at 1192.
 

 III. Legal Standard
 

 A.
 
 Standard of Review under AEDPA
 

 In determining whether a writ of habeas corpus should issue for a prisoner convicted by a state court, the standard of review in this matter is that prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), Pub.L. No. 104-32, 110 Stat. 1214- (1996);
 
 see Fuller v. Roe,
 
 182 F.3d 699, 702 (9th Cir.1999)
 
 (per curiam).
 
 The writ should issue only if the state court’s determination of the claim on the merits:
 

 (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
 

 28 U.S.C. § 2254(d). When there is no reasoned opinion from the state’s highest court, a federal court will “look through” to the lower court’s opinion to determine the state’s application of federal law.
 
 Shackleford v. Hubbard,
 
 234 F.3d 1072, 1079 n. 2 (9th Cir.2000),
 
 cert. denied,
 
 534 U.S. 944, 122 S.Ct. 324, 151 L.Ed.2d 242 (2001).
 

 Evidentiary hearings on habeas claims under AEDPA are subject to the strictures of 28 U.S.C. § 2254(e)(2), which states:
 

 (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
 

 (A) the claim relies on-
 

 (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
 

 (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
 

 (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
 

 This standard replaced the one articulated by the United States Supreme Court in
 
 Keeney v. Tamayo-Reyes,
 
 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992).
 
 Keeney
 
 had held that a petitioner was entitled to an evidentiary hearing only, “if he can show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure.” 504 U.S. at 11, 112 S.Ct. 1715.
 

 
 *MCCCXII
 
 In
 
 Keeney,
 
 the Supreme Court had also adopted a narrow exception to this rule, holding that a “petitioner’s failure to develop a claim in state-court proceedings will be excused and a hearing mandated if he can show that a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing.”
 
 Id.
 
 at 12, 112 S.Ct. 1715. It appears, however, that AEDPA overruled the “fundamental miscarriage of justice” exception, and that at this time, district courts cannot order evi-dentiary hearings unless the requirements of § 2254(e)(2) are met.
 
 See Shumate v. Newland,
 
 75 F.Supp.2d 1076, 1084, 1098-99 (N.D.Cal.1999) (“AEDPA, however, has ‘reduced considerably the degree of the district court’s discretion’ by imposing threshold requirements that must be met before a request for an evidentiary hearing may be entertained.”)
 
 (quoting Baja v. Ducharme,
 
 187 F.3d 1075, 1078 (9th Cir.1999));
 
 Rodriguez v. Zavaras,
 
 42 F.Supp.2d 1052, 1054-55 (D.Colo.1999) (holding that AEDPA did not codify
 
 Kee-ney,
 
 but instead “significantly curtails the availability of evidentiary hearings to develop material facts”)
 
 (quoting Porter v. Gramley,
 
 112 F.3d 1308, 1316 (7th Cir.1997));
 
 Pitsonbarger v. Gramley,
 
 103 F.3d 1293, 1298-99 (7th Cir.1996),
 
 vacated on other grounds,
 
 522 U.S. 802, 118 S.Ct. 37, 139 L.Ed.2d 6 (1997).
 

 B.
 
 Batson Standard
 

 Use of peremptory challenges to exclude members of a cognizable racial group from a jury is prohibited under the Sixth and Fourteenth Amendments.
 
 Bat-son.
 
 “To establish a claim of discriminatory selection of jurors, a defendant must first establish a prima facie case of purposeful discrimination.”
 
 United States v. Chinchilla,
 
 874 F.2d 695, 697 (9th Cir.1989). The elements of the prima facie case are: (1) that “the defendant is a member of a cognizable racial group; (2) the prosecution has removed members of such a racial group; and (3) circumstances raise an inference that the challenges were motivated by race.”
 
 Turner v. Marshall (“Turner
 
 I”), 63 F.3d 807, 812 (9th Cir.1995), overruled on other grounds by
 
 Tolbert v. Page,
 
 182 F.3d 677 (9th Cir.1999) (en banc).
 

 Once a prima facie case is made, the burden shifts to the prosecution to articulate race-neutral reasons for striking those jurors.
 
 Batson,
 
 476 U.S. at 97, 106 S.Ct. 1712;
 
 Chinchilla,
 
 874 F.2d at 697. This showing does not have to rise to the level necessary to strike a juror for cause.
 
 Batson,
 
 476 U.S. at 98, 106 S.Ct. 1712,
 
 Chinchilla,
 
 874 F.2d at 697. Once the prosecutor has offered its supposedly race-neutral reasons, the court “must determine whether the defendant has carried his burden of proving purposeful discrimination.”
 
 Hernandez v. New York,
 
 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991);
 
 McClain v. Prunty,
 
 217 F.3d 1209, 1220 (9th Cir.2000).
 

 “Statistical facts like a high proportion of African-Americans struck and a disproportionate rate of strikes against African-Americans can establish a pattern of exclusion on the basis of race that gives rise to a prima facie
 
 Batson
 
 violation.”
 
 Williams v. Woodford,
 
 306 F.3d 665, 682 (9th Cir.2002);
 
 Fernandez v. Roe,
 
 286 F.3d 1073, 1078 (9th Cir.2002);
 
 Turner I,
 
 63 F.3d at 813. However, without evidence of the size of the venire and how many African-Americans were in the venire, statistical information may be of little or no use in establishing a prima facie case of discrimination.
 
 See Williams,
 
 306 F.3d at 682.
 

 IV. Discussion
 

 The voir dire process as conducted for Petitioner’s case proceeded in the following manner. The initial venire of potential jurors was brought into the courtroom and given a brief description of the case, and
 
 *MCCCXIII
 
 sworn in. (RT 67-68.) The judge then questioned potential jurors at sidebar who wished to be excused for hardship, and excused those to which counsel had stipulated. (RT 69-98.) The next day the same process of excusal for hardship was repeated. (RT 101-112.) Thirty-three potential jurors were then seated in seats one through thirty-three. (RT 115-119.) Seats one through twelve represented the actual jury. As potential jurors sitting in seats one through twelve were struck, the jurors from seats thirteen to thirty-three would be asked, in order, to take the place of those struck from the first twelve seats.
 
 (See
 
 RT 231-41.) The judge extensively questioned the venire, followed by some questions by defense counsel before a final group was excused for hardship pursuant to stipulation of counsel, and the exercise of peremptory challenges then began. (RT 120-230.)
 

 As mentioned above, the prosecutor used three of his first four peremptory challenges to strike African-Americans from the venire, removing three of the four African-Americans, using the words of defense counsel, that were then “on the panel.” Unfortunately, it is not known how many African-Americans were part of the venire, as defense counsel’s statement could be interpreted to refer to either the twelve jurors then to be empaneled or the entire venire.
 
 [2]
 
 It is also unknown if the defense exercised any of its peremptory challenges on African-Americans. Furthermore, although it may at first seem intuitive to believe that using three of the first four peremptory challenges on African-Americans raises at least a “reasonable inference” of purposeful discrimination, it would not necessarily be so if the persons remaining in the venire contained a significant percentage of African-Americans, or if viewing the totality of the circumstances, there are other indicia that the prosecutor’s acts were not racially motivated.
 

 The cases under
 
 Batson
 
 that rely on statistical information to establish a prima facie case of purposeful discrimination do not analyze the percentage of peremptory challenges used on the protected class alone, but consider it in the context of the percentage of members of that class in the venire as a whole.
 
 See Fernandez,
 
 286 F.3d at 1078 (prosecutor removed 57% of available Hispanic jurors with peremptory challenges and used 21% of his peremptory challenges on Hispanics when only 12% of the venire was Hispanic);
 
 Turner I,
 
 63 F.3d at 812-13 (prosecutor struck 56% of available African-American jurors with peremptory challenges and used 56% of his peremptory challenges on African-Americans when only 30% of the venire was African-American). In this case we can only say with certainty that the prosecutor used 60% of his peremptory challenges, and 75% at the time of the
 
 Wheeler
 
 motion, on African-Americans. The record is unclear as to what percentage of African-American jurors were struck with
 
 *MCCCXIV
 
 peremptory challenges (by either the prosecutor, but more especially the defense), and is also unclear as to the percentage of African-Americans making up the venire (both the original thirty-three, and the subsequent twenty-two).
 
 [3]
 
 It is clear from the record, however, that the prosecutor accepted the jury six times prior to using any peremptory challenges. During all six of those acceptances, the jury contained juror number 7013, an African-American who was later struck by a peremptory challenge; and during four of the times that the prosecutor accepted the jury it contained juror number 8963, also an African-American who was later struck using a peremptory challenge.
 

 Petitioner takes the position in his First Amended Petition, signed under penalty of perjury, that only four of forty-nine potential jurors were African-American by saying that at the time of his counsel’s
 
 Wheeler
 
 motion, “there was only one African American left to [choose] from.” (First Amended Petition at 5.) There are several reasons why this statement, both alone, and in conjunction with the objection made by trial counsel on the record, is insufficient to persuade this Court to grant the writ. First, this statement is not equivalent to the statement made by Petitioner’s counsel (that there was only one African American left “on the panel”) when making the
 
 Wheeler
 
 motion, as counsel apparently was referring to the remaining prospective jurors in seats one through twelve, and Petitioner seems to be referring to the remaining potential jurors who had already been questioned but were not seated in seats one through twelve. Second, even if Petitioner’s statement is taken as true, it almost certainly only refers to the potential jurors originally seated in seats one through thirty-three, because it was only after the
 
 Wheeler
 
 motion and the exercise of additional peremptory challenges that the additional twenty-two potential jurors were questioned and made part of the pool of prospective jurors during voir dire. Third, as a corollary to the above observation, at the time the prosecutor struck the prospective juror in seat number eight, causing the
 
 Wheeler
 
 motion to be made, there were only three prospective jurors left to choose from (those in seats thirty, thirty-two, and thirty-three). That only one out of those three was African American is by no means remarkable, nor sufficient without more, to automatically show that a reasonable inference of purposeful discrimination was raised. Additionally, in Petitioner’s Reply to the Ob
 
 *MCCCXV
 
 jections to the R & R, Petitioner contradicts himself when he concedes that the race of all forty-nine members of the veni-re questioned for voir dire has not been conclusively determined. (Pet’s Reply to Resp.’s Objs. to Mag. J.’s R & R at 2, 5.)
 

 Nevertheless, the Magistrate Judge, in the absence of any evidence to the contrary offered by Respondent, chose to accept Petitioner’s characterization of the composition of the venire (only four African Americans out of forty-nine) as correct. This conclusion is untenable in light of both AEDPA and the evidence contained in the record. The Magistrate Judge incorrectly shouldered Respondent with the burden of producing evidence to refute Petitioner’s allegation.
 
 [4]
 
 The burden of proof at all times remains with the Petitioner. Petitioner has requested the writ, and it is thus Petitioner’s burden to persuade this court that a state court reached a decision that was “contrary to, or involved an unreasonable application of, clearly established Federal law.” 28 U.S.C. § 2254(d)(1); Price
 
 v. Vincent,
 
 538 U.S. 634, 123 S.Ct. 1848, 1853, 155 L.Ed.2d 877 (2003)
 
 (citing Woodford v. Visciotti,
 
 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)
 
 (per curiam)).
 
 Although the state court’s determination that a prima facie case was not made is not subject to a presumption of correctness in this case due to the erroneous application of
 
 Wheeler’s
 
 “strong likelihood” standard rather than
 
 Batson’s
 
 “reasonable inference” standard, the burden still lies with Petitioner to make out a prima facie case and ultimately prove purposeful discrimination.
 
 Wade,
 
 202 F.3d at 1192. With the evidence before the Court on
 
 de novo
 
 review, Petitioner cannot meet that burden because the “evidence” is at best both inconclusive and speculative.
 

 In analyzing the totality of the circumstances as they are presented in the record, there is even less credible evidence showing that a prima facie case was made. The SR
 
 &
 
 R discusses in detail the three jurors struck, and the allegedly race-neutral reasons why they may have been stricken, tracking the opinion of the California Court of Appeal. (Lodgment, No. 4 at 5-8.) The SR & R then purports to demonstrate why those reasons do not comport with the prosecutor’s acceptance of othér jurors. This Court respectfully disagrees with the analysis contained in the SR & R for the following reasons.
 

 First, the SR
 
 &
 
 R analyzes juror number 7013. Juror number 7013 had a son who was convicted of grand theft and incarcerated for the crime. (RT 190-91.) The SR & R correctly notes that it appears that the prosecutor was attempting to offer this as a race-neutral reason for the use of the peremptory challenge when he was cut off by the judge. (RT 240.)
 
 Wheeler
 
 expressly authorizes strikes based on this rationale: that having a juror whose close relative has been
 
 convicted
 
 of a crime “has often been deemed to give rise to a significant potential for bias against the prosecution.”
 
 Wheeler,
 
 22 Cal.3d at 277 n. 18, 148 Cal.Rptr. 890, 583 P.2d 748. The SR & R attempts to show that this supposedly race-neutral reason would be a pretext by juxtaposing juror number 7013 with juror number 3236, whose son was arrested for robbery and had a drug problem. (RT 191-92.) However, there is no indication in the record that juror number 3236’s son was ever convicted of the crime for which he was
 
 *MCCCXVI
 
 arrested, meaning that juror number 7013 and juror number 3236 are not in similar circumstances with respect to the conviction of a close relative, a relevant factor, and that the prosecutor’s not exercising a peremptory challenge on juror number 3236 does not give rise to any presumption that the reason the prosecutor was attempting to offer for striking juror number 7013 would be a pretext.
 
 [5]
 

 Again with respect to juror number 7013, the SR
 
 &
 
 R mentions jurors number 3134 and 3601 as representing inconsistencies with the prosecutor’s rationale. Juror number 3134 had pled no contest to driving while under the influence of alcohol. (RT 192.) When asked whether he felt he was treated fairly by the criminal justice system, he said both, “I guess it was fair,” and later, “I always figured I was set up,” and then finally, “was I guilty? Yeah.” (RT 192-93.) From juror number 3134’s responses, it is unclear as to whether he felt he was treated fairly. Regardless, however, juror number 3134 was excused due to hardship
 
 before
 
 any peremptory challenges were used by either side. (RT 206, 232.) Juror number 3134 therefore represents no useful comparison with the jurors that were struck using peremptory challenges. Juror number 3601 was arrested for and charged with possession of throwing stars, for which he paid a “small he paid a small fine.” (RT 194-95.) There is no evidence in the record that juror number 3601 was ever imprisoned for that offense, but only that he felt that the officer’s initial inquiry of him was unjustified.
 
 (Id.)
 
 It is by no means conclusive that because the prosecutor did not strike juror number 3601, that juror number 7013 was struck under false pretexts.
 

 Second, with respect to juror number 8963, who was the subject of the prosecutor’s second peremptory challenge, juror number 3601 is again relevant. Juror number 8963 was unemployed, but was previously employed as a truck driver, was single, and in the words of the California Court of Appeal, led “a solitary life.” (Lodgment No. 4 at 7.) The Ninth Circuit has held that a “loner” personality can justify a peremptory challenge.
 
 Lewis v. Lewis,
 
 321 F.3d 824, 833 (9th Cir.2003)
 
 (citing United States v. Daly,
 
 974 F.2d 1215, 1219 (9th Cir.1992)). However, although juror number 3601 was also unemployed, he was not single — he was married, although currently separated, and was thus in a different position than juror number 8963. (RT 171-72.) The way in which juror number 8963 and juror number 3601 are the most similar is that neither had previous jury experience. (RT 158-59, 171-72.)
 

 Juror number 2914 was a truck driver and also had no jury experience, but was married.
 
 [6]
 
 (RT 146-47.) The California Court of Appeal found that at the time juror number 8963 was struck, “the vast number of individuals on the panel had prior jury experience.” (Lodgment No. 4 at 7.) The SR
 
 &
 
 R then incorrectly states, based on an implicit assumption that “panel” meant “venire,” that this finding is not supported by the record, citing that at the time juror number 8963 was struck, only nineteen of the thirty-three prospective ju
 
 *MCCCXVII
 
 rors, or fifty-eight percent, had jury experience. SR
 
 &
 
 R at 21-22. If, however, one were to analyze the twelve jurors constituting the “panel” at the time juror number 8963 was struck, nine of the remaining eleven, or eighty-two percent, had jury experience, confirming the California Court of Appeal’s conclusion.
 
 [7]
 

 Third, juror Barnett,
 
 [8]
 
 who was the subject of the prosecutor’s third peremptory strike, had substantial contacts in the law enforcement community. (RT 222-23.) The Magistrate Judge does not point to a comparable juror who was not struck from the panel, but instead interprets Barnett’s response to a very poorly worded question from defense counsel in a way different from the California Court of Appeal. The colloquy proceeded:
 

 [Counsel for Petitioner’s Co-Defendant]: And do you have a—because you have friends or even colleagues that you, I presume, respect these people, they are in law enforcement, do you feel that that makes you feel that police are generally—generally honest, generally no more than the rest of us or certain kinds of law enforcement officers generally tell the truth?
 

 [Barnett]: No. I feel they don’t.
 

 [Counsel for Petitioner’s Co-Defendant]: You feel you could be a fair and impartial juror?
 

 [Barnett]: Yes.
 

 (RT 223.) From this colloquy, the California Court of Appeal found, and Respondent argues here, that Barnett’s “contacts with law-enforcement personnel have caused him to harbor doubts about the credibility of such individuals.” (Lodgment No. 4 at 8.) Although the value of the question and response may be relatively low due to the poor questioning, it is at best unclear as to whether Barnett harbored anti-law enforcement bias, which would be a race-neutral reason to strike Barnett. The Magistrate Judge does not give the finding of the California Court of Appeal the deference it is due under AED-PA, instead finding that the only reasonable interpretation is that Barnett believed he would be a fair and impartial juror. Since the record is at best unclear, Petitioner has not demonstrated by clear and convincing evidence that the California Court of Appeal’s determination regarding Barnett was incorrect. Therefore the Court of Appeal’s interpretation of Barnett’s answer must govern, providing Respondent with a legitimate race-neutral reason for striking Barnett. 28 U.S.C. § 2254(e)(1).
 

 Fourth, the Magistrate Judge concluded that the prosecutor engaged in disparate questioning of the prospective jurors in that “the prosecutor did not engage any of the three Black jurors in any questioning before striking them.” SR & R at 24. It is true that the prosecutor did not engage any of the three African American jurors in questioning before striking them, but it is also true that the prosecutor did not specifically question
 
 any
 
 particular jurors prior to the exercise of peremptory challenges. (RT 227-29. Cf. RT 221-27 (defense counsel’s questioning of specific jurors).) Since the questioning was not disparate between the African American jurors struck and the other jurors, there arises no inference of discriminatory animus. In addition, at the stage
 
 *MCCCXVIII
 
 of the inquiry where it is being determined whether a prima facie case of purposeful discrimination is made, it should be remembered that a prosecutor’s reasons for the peremptory challenges are deemed to be race neutral.
 
 Hernandez,
 
 500 U.S. at 360, 111 S.Ct. 1859 (“Unless a discriminatory intent is inherent in the prosecutor’s explanation, the reason offered will be deemed race neutral.”);
 
 McClain,
 
 217 F.3d at 1220. The reasons offered here are not inherently discriminatory, and Petitioner has not offered evidence sufficient to prove that the reasons were not race neutral, so therefore, the reasons are deemed to be race-neutral.
 

 In summary, the Magistrate Judge’s criticisms of the California Court of Appeal and Respondent’s race-neutral rationale for the peremptory challenges made by the prosecutor are not supported by the record, nor do they give the California Court of Appeal the proper deference under AEDPA. Taken together with other factors such as the prosecutor’s having accepted the jury multiple times while it contained African Americans, with the evidence before this court, performing a
 
 de novo
 
 review due to the California courts’ error in using the “strong likelihood” standard, Petitioner has not come forward with sufficient evidence to show a reasonable inference of purposeful discrimination arose solely on the basis of statistics that would have required the trial judge to perform the entire
 
 Batson
 
 analysis at the time the objection was made.
 
 [9]
 

 Furthermore, AEDPA proscribes this court from ordering an evidentiary hearing in order to attempt to clarify the matter because of Petitioner’s neglect in presenting information regarding the composition of the venire to the state courts during his direct appeal and state habeas petition.
 
 [10]
 
 28 U.S.C. § 2254(e)(2);
 
 Bragg v. Galaza,
 
 242 F.3d 1082, 1090 (9th Cir.
 
 *MCCCXIX
 
 2001),
 
 amended by
 
 253 F.3d 1150 (9th Cir.2001). In his direct appeal, Petitioner argued the same
 
 Batson
 
 violation that he argues here. (Appellant’s Opening Br. to Cal. Ct.App., lodged as Exh. A to Resp.’s Notice of Mtn. and Mtn. to Vacate Order for Evidentiary Hearing; Memo, of Pts. and Authorities.) There are two reasons why the information regarding the racial composition of the venire “could [] have been previously discovered through the exercise of due diligence” such that introduction of that evidence at this time is inappropriate. 28 U.S.C. § 2254(e)(2)(A)(ii).
 

 First, the California Code of Civil Procedure provides a method by which, upon motion, juror records can become unsealed and available for use on appeal. Cal. Civ. Pro.Code § 237 (West 2004);
 
 Zamudio v. Superior Court,
 
 64 Cal.App.4th 24, 74 Cal.Rptr.2d 765 (1998). Even if no person would be able to testify from memory as to the composition of the venire at the time of Petitioner’s direct appeal, these records possibly could have been used to help attempt to establish the composition of the 49 members of the venire, or at the very least, the racial composition of jurors who reported on that same day. Second and more importantly, California law under
 
 Wheeler
 
 requires defense counsel to make as complete a record as possible as to the reasons underlying their
 
 Wheeler
 
 motion.
 
 People v. Perez,
 
 29 Cal.App.4th 1313, 1326, 35 Cal.Rptr.2d 103 (1994)
 
 (citing People v. Fuentes,
 
 54 Cal.3d 707, 714-15, 286 Cal.Rptr. 792, 818 P.2d 75 (1991));
 
 People v. Ortega,
 
 156 Cal.App.3d 63, 69-70, 202 Cal.Rptr. 657 (1984). Petitioner availed himself of neither of those options in the state court proceedings, and under AEDPA, he is barred from doing so now.
 
 [11]
 

 
 *MCCCXX
 
 Furthermore, Petitioner’s self-serving statement contained in his habeas petition is insufficient to warrant an evidentiary hearing at this time, and insufficient in order to grant him the relief he seeks on his Sixth Amendment-based
 
 Batson
 
 claim.
 
 See Turner v. Calderon,
 
 281 F.3d 851, 881 (9th Cir.2002) (petitioner’s self-serving statement made years after the fact insufficient to establish a Sixth Amendment ineffective assistance of counsel violation, stating that if the rule were otherwise, every conviction would have to be re-litigated upon nothing more than a self-serving statement from the defendant that he would have accepted the plea if he were better advised);
 
 Underwood v. Clark,
 
 939 F.2d 473, 476 (7th Cir.1991) (requiring some substantiation of petitioner’s claim outside of the petition itself before the claim acquires “sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.”);
 
 Ellzey v. United States,
 
 210 F.Supp.2d 1046, 1051 (C.D.Ill.2002)
 
 (citing Toro v. Fairman,
 
 940 F.2d 1065 (7th Cir.1991)) (self-serving affidavit, albeit made under penalty of perjury, is insufficient to warrant an evidentiary hearing without additional objective evidence to support the alleged facts, especially when the government disputes those facts);
 
 Paters v. United States,
 
 159 F.3d 1043, 1047 (7th Cir.1998) (holding that a petitioner’s declaration in support of his claim, signed under penalty of perjury does not constitute “objective evidence” under
 
 Toro); Engelen v. United States,
 
 68 F.3d 238, 240-41 (8th Cir.1995) (petitioner must present credible, non-conclusory evidence that he would have pled guilty to support his claim of a Sixth Amendment violation for ineffective assistance of counsel when petitioner had rejected a plea agreement and gone to trial instead).
 
 [12]
 
 '
 
 But see Magana v. Hofbauer,
 
 263 F.3d 542, 548 n. 1 (6th Cir.2001) (rejecting requirement that petitioner assert and prove his claim by objective evidence). The insufficiency of Petitioner’s statement is even more apparent when neither the record nor the statement made by Petitioner’s counsel during voir dire lend direct support to Petitioner’s claim, and when Petitioner himself has admitted that the composition of the venire is not conclusive.
 

 Therefore, because of defense counsel’s very brief objection during jury selection and the failure of Petitioner to clarify and expand the record on appeal, the record before this Court does not contain sufficient information for a conclusion that a
 
 prima facie
 
 case of discrimination is shown on the basis of statistics alone especially in the face of other factors which are easily discerned from the record, such that the state court’s decision is subject to reversal under AEDPA.
 
 [13]
 

 See Williams,
 
 306 F.3d
 
 *MCCCXXI
 
 at 682;
 
 Anderson v. Cowan,
 
 227 F.3d 893,
 
 901 (7th
 
 Cir.2000) (affirming denial of a petition for a writ of habeas corpus when the state court found that a prima facie case was not made when petitioner failed to preserve a record of the racial composition of the jury pool).
 

 V. Conclusion
 

 Since Petitioner has failed to comply with the burden that he show that the state court’s decision that no prima facie case of purposeful discrimination was made was “contrary to, or an unreasonable application of, clearly established Federal law,” and without the ability to expand the record at this time, his petition must be denied.
 

 Therefore, it is hereby ordered that the petition for a writ of habeas corpus is DENIED, and the action is DISMISSED with prejudice.
 

 IT IS SO ORDERED.
 

 [1]
 

 . On August 12, 2002, the Magistrate Judge first ordered an evidentiary hearing in this case, to be held on October 10, 2002. On September 6, 2002, Respondent moved that the evidentiary hearing be continued until November 13, 2002. The motion was granted on September 9, 2002. Respondent thereafter filed a Motion to Vacate Order for Eviden-tiary Hearing on October 11, 2002 on two grounds: 1) that petitioner was not entitled to an evidentiary hearing; and 2) that a hearing would serve no useful purpose as there was no evidence to present, based upon affidavits that neither the prosecutor nor Petitioner's trial counsel had notes or recollections as to the racial composition of the juty and venire. This motion was denied without explanation in a minute order dated that same day. Thereafter on October 18, 2002, the Magistrate Judge issued a minute order (again) denying Respondent’s motion without prejudice, but also stating that, "[s]hould respondent conclude that he is unable or unwilling to offer further evidence in this case, respondent may renew his motion and the Court will re-consider its ruling.'' (Minute Order, Oct. 18, 2002.)
 

 On October 29, 2002, Respondent filed a Renewed Motion to Vacate Order for Eviden-tiary Hearing asserting the same two grounds for vacating the hearing. Subsequently, the Magistrate Judge granted the Renewed Motion in a minute order dated November 1, 2002, stating that "[b]ased on respondent’s representations, respondent's motion is GRANTED." (Minute Order, Nov. 1, 2002.) While not completely clear, it appears from the orders and motions that the Magistrate Judge found the latter of the two grounds (no useful purpose for the hearing) offered by Respondent to be persuasive.
 

 [2]
 

 . Although not dispositive, it appears from the context of defense counsel’s colloquy with the court that the word "panel” was referring to seats one through twelve, or the potential jurors that would become the jury, as opposed to the venire as a whole. Quoted below is the exchange between the Court and Petitioner's counsel:
 

 The Court: I don't understand the significance of your comment that originally [the prosecutor] passed five times because one of the jurors originally that was exercised by the People was
 
 on the panel
 
 that was originally accepted, so I don't understand that point of your argument.
 

 [Petitioner's Counsel]: Oh, because I think it's essentially to see what kind of racial makeup of the jury is and to move from that. Ms. Boyd was originally one — the other ones getting on,they have all been excused. We only have one African American sitting
 
 on the panel
 
 now.
 

 (RT 238-39 (emphasis added).)
 

 [3]
 

 . Of course, those statistics that are missing before the Court now would have been apparent to the trial judge presiding over voir dire.
 
 Cf.
 
 infra, note 9. This Court, furthermore, determines that it would be inappropriate to use generalized information regarding the racial composition of the county of Los Angeles, or some other political subdivision thereof, as a surrogate for the racial composition of the venire, as there is no guarantee that such information will be probative of the composition of the particular venire at issue, a venire drawn on one particular day from one particular place. Neither party in this action has requested that such judicial notice be taken.
 
 Contra United States v. Alvarado (‘‘Alvarado 11’’),
 
 923 F.2d 253, 255-56 (2d Cir.1991). The
 
 Alvarado II
 
 court, in the absence of data specific to the venire at issue, took judicial notice of Census data regarding the racial composition of the federal district where the trial was held (the trial was held in the United States District Court for the Eastern District of New York), and from which the jurors were drawn. It is unclear as to whether either party requested that the court take judicial notice of this information, or whether the court did so
 
 sua sponte. United States v. Alvarado, ("Alvarado I"),
 
 891 F.2d 439, 444 (2d Cir.1989).
 
 Alvarado
 
 is not controlling in this case because it was based upon direct review from a federal trial court, not the deferential standard applicable here under AEDPA, as the idea of using Census data in the absence of specific juror data is not "clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).
 

 [4]
 

 . In his October 18, 2002 minute order, the Magistrate Judge said that, “the lack of any information regarding the ultimate composition of the jury, will force the Court to make its determination in light of petitioner’s evidence (which is already in the record), but without benefit of any counter-evidence from the State.” (Minute Order, Oct. 18, 2002.)
 

 [5]
 

 . Juror number 3236 was struck via a peremptory challenge exercised by the defense. (RT 234.) In a footnote, the SR & R (at 20 n.19), points out that the prosecutor used his fifth peremptory challenge to dismiss a juror (number seven from the second venire of twenty-two) whose mother-in-law was convicted of drug possession and whose brother-in-law was convicted of murder, bolstering the argument made here that the prosecutor was consistent in his use of peremptory challenges on this ground. (RT 266-68, 291.)
 

 [6]
 

 . Juror number 2914 was struck via a peremptory challenge exercised by the defense prior to the prosecution's first peremptory challenge. (RT 235.)
 

 [7]
 

 . The Magistrate Judge notes that of the total of fifty-five prospective jurors questioned during voir dire, thirty-two of the fifty-five, or fifty-eight percent had previous jury experience, such that the panel, at the time juror number 8963 was struck, contained a greater percentage of persons with jury experience than the venire as a whole, either looking at the original thirty-three, or the total fifty-five prospective jurors.
 

 [8]
 

 . Barnett's juror number is not apparent from the record, but he was seated during voir dire in seat number twenty-four.
 

 [9]
 

 . The Second Circuit held in
 
 Overton v. Newton,
 
 295 F.3d 270 (2d. Cir.2002), where a similar statistical disparity was shown (prosecutor used seven of ten peremptory challenges on African Americans), that this evidence alone was insufficient to raise a reasonable inference sufficient to continue the
 
 Batson
 
 test. The court said:
 

 [W]e express no view of what we might have concluded if petitioner, who bore the burden of articulating and developing the factual and legal grounds supporting his
 
 Batson
 
 challenge before the trial court, had renewed his claim once jury selection was completed or even when the record was fully established. Because this was not done, the trial judge never confronted, and the trial record does not reveal, what the statistics would have shown at the conclusion of jury selection. If those statistics sufficiently established the inference that challenges were based on race, the court could then have implemented the
 
 Batson
 
 process to ensure that impermissible challenges would not be allowed. If, on the other had, the statistics at the conclusion failed to support a sufficient inference, there would be no need to engage in the process. We cannot say, on this record, that the trial judge's refusal to implement
 
 Batson’s
 
 process for testing each questioned challenge midway in the process was an unreasonable application of the
 
 Batson
 
 requirements.
 

 Id.
 
 at 279-80. It should be noted that in
 
 Overton,
 
 the record before the reviewing court was complete enough to be able to ascertain the race of all the veniremembers that had been subject to peremptory challenge at the time the
 
 Batson
 
 motion was made.
 
 Id.
 
 at 274-75. The
 
 Overton
 
 court, as demonstrated in the above quotation, seems to focus on the record that was made, or should have been made, before the trial judge, implying that the trial judge, although she would have been able to observe the race of the jurors without needing to refer to the record, properly based her decision solely on the record made by counsel, and not her personal observations.
 

 [10]
 

 . Similarly, this Court cannot order that the record be expanded without a hearing since that would achieve the same end as an evi-dentiary hearing and frustrate the purpose of § 2254(e)(2).
 
 See Boyko v. Parke,
 
 259 F.3d 781, 790 (7th Cir.2001).
 

 [11]
 

 . Notwithstanding the trial judge’s shortness in finding that a prima facie case was not made, defense counsel made no further efforts to clarify the record to comply with California law, either orally or in writing. Additionally, the court did not make a final ruling against Petitioner’s
 
 Wheeler
 
 motion, but rather invited Petitioner's counsel to bring that motion again if it would still be meritorious at the conclusion of jury selection. If defense counsel's motion had significant merit, an effort should have been made to renew the objection and make a more complete record in order to preserve the issue for appeal. It should be made clear that the trial judge cut off the prosecutor, but never defense counsel, who therefore presumably would have made as full an objection as he desired. Furthermore, the judge's ruling made clear that he would be willing to reconsider that ruling again in the future. Quoted below are the relevant portions of counsel's objection, which was made immediately after the prosecutor struck the third African American. Note that at no time did the judge interrupt defense counsel:
 

 (The following proceedings were held at the bench:)
 

 [Petitioner’s Counsel]: At this time I would make a motion under
 
 Wheeler,
 
 Your Honor. People have exercised four peremptories after passing, I believe, five or six times. Three of the four peremptories that have been exercised, the last three have all been African Americans. The first one was a woman, last two have been men.
 

 [Counsel for Petitioner’s Co-Defendant]: I would join in that motion, Your Honor. The Court: I don’t understand the significance of your comment that originally [the prosecutor] passed five times because one of the jurors originally that was exercised by the People was on the panel that was originally accepted, so I don't understand that point of your argument.
 

 [Petitioner’s Counsel]: Oh, because I think it’s essentially to see what kind of racial makeup of the jury is and to move from that. Ms. Boyd was originally one — the other ones getting on,they have all been excused. We only have one African American sitting on the panel now.
 

 The Court: Let me take a look at my notes.
 

 The Court:
 
 At this point
 
 I’m not going to find a prima facie
 
 Wheeler
 
 violation. However, I suppose if there are future uses of peremptories by the prosecution as to the subject matter group, then
 
 I suppose you could renew your application at that point in time.
 

 
 *MCCCXX
 
 [The Prosecutor]: So the record is clear on this issue, Ms. Joyce Boyd, juror number one, indicated that she had a son who—
 

 The Court: You don't need to give an explanation because I'm not finding a prima facie.
 

 [The Prosecutor]: I understand that. I wanted, however, the record squeaky clean on this.
 

 The Court: I don’t think it needs to be squeaky clean.
 

 [The Prosecutor]: I will defer to the Court’s decision.
 

 The Court: Okay.
 

 [Proceedings continue in open court]
 

 (RT 238-40 (emphasis added).)
 

 [12]
 

 . Here, Respondent’s Answer generally denied “each and every allegation of the Petition.’’ (Answer to First Am. Pet. for Writ of Habeas Corpus at 2.)
 

 [13]
 

 . A contrary conclusion would cause great prejudice to Respondent. Throughout the appellate process of his conviction (both on direct review and via habeas petitions), Petitioner has had the burden of proof. To penalize Respondent now for Petitioner's failure to meet that burden by clarifying and expanding the record back when such information would have easily been available is unfair.